# THE ST. LOUIS NATIONAL STOCK YARDS

*v.*

## JAMES O'REILLY *et al.*

1. MECHANIC'S LIEN—*in respect to sub-contractor.* Payments made by the owner of a building, of just debts, on the orders of the sub-contractor, accepted verbally before any notice of lien is served on such owner by sub-contractors, is good, though the payments are made after service of the notice.

2. If a sub-contractor does not give the owner notice of his intention to claim a lien on the building within twenty days from the completion of the sub-contract, or within twenty days after payment should have been made for the work under the sub-contract, he will have no lien under the statute. The lien can not be created outside the statute, or extended beyond its terms.

3. Where, after possession is given of a building, defects and omissions are discovered, which the architect supervising the work requires to be supplied to complete the contract, and this is done by sub-contractors, the sub-contracts can not be said to be completed until such work is done, and notice of liens by such sub-contractors may be given with reference to this point of time.

4. SAME—*decree finding sum due on two different contracts, when proper*. Where there are two distinct contracts for the erection and completion of two separate buildings, situate, however, on the same tract of land, there is no error in finding the gross sum due from the owner under both contracts. It is otherwise where the buildings are on different lots.

5. SAME—*extends to whole tract of land*. As the statute declares a mechanic's lien shall be a lien on the lot or tract of land on which the erections are made, there is no error in making a decree in respect to the erection of two buildings on an United States survey of 400 acres, extend to the entire tract.

6. VERBAL ACCEPTANCE *of order*. A verbal acceptance of an order drawn on a party is binding on him, and his statement, when presented with the order, that he could not then pay it, but would pay the same, is equivalent to an acceptance.

7. AGENCY—*ratification*. Where an order is drawn in a party's name by his son and clerk, who was attending to business for the father, and the latter afterwards ratifies the act, the order, on acceptance and payment, can not be impeached or avoided by creditors, in a contest for liens under the Mechanic's Lien Law, where no fraud is shown.

8. BUILDING CONTRACT—*damages for delay*. On referring a mechanic's lien cause to a master, to report his conclusions as to certain disputed facts in the case, among which there was no claim of the defendant for damages for delay in completing the work, an exception to his report in not allowing such damages was *held* properly overruled.

9. SAME—*waiver of damages for delay*. Where a building contract provided that a given sum per day should be deducted from the price to be paid the contractor, as liquidated damages for every day's delay in completing the work after that fixed for final completion, and it appeared that the owner received possession by the day named, though the work was not then finally completed, and the delay was caused by requiring extra work, and the owner expressly waived the claim for damages, it was *held*, that such claim was properly rejected by the court in a proceeding to enforce mechanic's liens against the owner.

APPEAL from the Circuit Court of St. Clair county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Messrs. BOWMAN, NŒTLING & HALBERT, for the appellant.

Messrs. G. & G. A. KŒRNER, for the Missouri Planing Mill Company, appellee; Mr. CHARLES CONLON, for appellee O'Reilly; Mr. M. MILLARD, for other parties.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was a petition on the equity side of the St. Clair circuit court, at the January term, 1874, by James O'Reilly, plaintiff, and against the St. Louis National Stock Yards, the owner of the premises, Nathan L. Milburn, the contractor, and James Williams, the Mississippi Planing Mill Company, and others, sub-contractors under Milburn, defendants, to enforce a lien complainant claimed upon the premises, the same being known. as United States Survey 627, and to which the stock yards company claimed title.

Answers were put in and replications filed, and a cross-petition by the Mississippi Planing Mill Company, to which answers were put in by the stock yard company, by Williams, by Seigel & Bobb, by Stoner, by Cochrane & Kamerer and by Hayden, by demurrer, and a motion by O'Reilly to strike the cross-petition from the files.

At this stage of the proceedings this agreement was entered into by the parties:

" Agreement by all, now parties to the suit, to refer to A. S. Wilderman as special master, to take testimony and make report as to:

" 1.  Whether statutory notices were given to appellant by any of the parties to the suit as sub-contractors, and if so, on what dates and by whom?

" 2.  Was appellant indebted to Milburn when such notices were served upon it, and if so, how much, and under what contract?

" 3.  If any of the parties to the suit are entitled to a lien, who?

" 4.  What is the amount due to each of the parties respectively, from Milburn?

" 5.  What sum is each entitled to on his claim so due from Milburn?

" When the evidence on said points is taken, the special master to hear the case, report conclusions to the court, where

exceptions may be filed and heard by him, and afterwards by the court, on same or other exceptions."

Depositions were laid before the master and oral testimony heard by him.

The special master filed his report, finding the several amounts due the sub-contractors from Milburn, and the amount due from appellant to Milburn, to be fourteen thousand two hundred and sixty-eight dollars and fifty-eight cents, and finding, also, the time on which the several sub-contractors gave the statutory notice of their claim to a lien.

The stock yard company, the appellant, filed the following exceptions to the report, namely:

1. Because the master did not allow appellant the damages provided for in the contracts for delay in constructing the buildings.

2. Because there are two separate contracts for two separate buildings on separate parts of said premises, and the finding should be separately as to each.

3. Because the master found, under the third point submitted to him, that the parties to the suit were entitled to liens.

The Mississippi Planing Mill Company filed the following exceptions:

"That he found that notices, substantially as required by statute, were served by the different parties to the suit upon appellant; that he finds the indebtedness collectively in one general amount for work upon two distinct and separate contracts for two different buildings and extra work on each; that he finds the order by Milburn, given to Shickle, Harrison & Co., on appellant, for $4000, to have been binding on appellant, and that he likewise finds the order of Siegel & Bobb to have been binding on appellant, and that both were good equitable assignments of the funds due Milburn, and the amounts not chargeable against appellant in this suit; that he found the finding of the architect, of $14,268.58, as due Milburn on settlement with appellant; that he finds the several sub-contractors, parties to this suit, entitled to said $14,268.58,

after deducting costs of suit, and for the several amounts stated; that he recommends, as in said report; that he finds that the statutes provide for a lien in such cases;" all which were overruled by the master.

The master found nothing due to Siegel & Bobb, and found the total amount due from Milburn to the sub-contractors to be seventeen thousand two hundred and sixty-seven dollars and twenty-four cents.

The cause coming on for final hearing on the pleadings, proofs and report of the master, the exceptions thereto and the overruling the same by him, and the renewal of the same before the court, which the court overruled, approving the report of the master and adopting that as the basis of a decree, the court thereupon decreed as in the master's report, and further decreed, that appellant pay to A. S. Wilderman, as special master, continued for the purpose, said fourteen thousand two hundred and sixty-eight dollars and fifty-eight cents, with interest at six per cent per annum from date, to be by him paid out and distributed as set forth in section " 5 " of the said master's report, each award with interest at six per cent per annum; that in case of default in such payment, on part of appellant, of said money, with interest, within forty days from 27th June, 1875, the said master shall sell at public auction, to the highest and best bidder, for ready money, at the front door of the court house, in the city of Belleville, the premises in the petition and cross-petition described, to-wit: U. S. Survey 627, in St. Clair county, Ill., together with the improvements in said petitions mentioned, having first given notice of the time, place and terms of sale, together with a description of the premises to be sold, and to give the purchaser or purchasers a certificate of purchase, conditioned that if the premises be not redeemed, according to law, within fifteen months, that a deed will be given for the purchase, and that if a deed so become due, the said master execute and deliver the same, conveying to the purchaser said premises, and all the right, title and interest of the parties to this suit therein, and that the said master distribute the proceeds of

such sale (first paying therefrom the costs of sale), in the same manner as directed for the distribution of the fourteen thousand two hundred and sixty-eight dollars and fifty-eight cents, to be paid by appellant, and the remainder, if any, to pay to appellant.

An appeal was allowed to the National Stock Yards Company, Milburn, the contractor, and to the Mississippi Planing Mill Company, which was perfected alone by the stock yards company, the planing mill company assigning cross-errors.

These cross-errors will be first noticed. They are based on payments made by appellant to Shickle, Harrison & Co., after notice of the lien claimed by the planing mill company, and the same with regard to Siegel & Bobb. The planing mill company claim that the sums of money respectively paid to these parties after notice, should go back to and be added to the amount found due by the master and by the decree of the court, whereby the distributive share of that company would be largely increased.

Shickle, Harrison & Co. were sub-contractors of Milburn for the iron work of the hotel building and of the bank building. Before notice of any lien, appellant verbally accepted an order from Milburn, in favor of these sub-contractors, for four thousand dollars, and paid the same out of the amount then due Milburn on the contract.

It is urged by the planing mill company, such an acceptance was not valid. We do not think there is any force in this objection. This court held, in *Mason* v. *Dousay,* 35 Ill. 429, that a verbal acceptance of a bill of exchange was binding on the acceptor. In this case an order was drawn by Milburn on appellant, who said they could not then pay it, but would pay it, as the amount was due Milburn from them. This certainly was equivalent to an acceptance, and it was followed up by payment.

As to Siegel & Bobb's claim, that was for plumbing, gasfitting and putting up gas fixtures, amounting to seventeen hundred dollars, and not disputed. The objection is, that on an order from the son and clerk of Milburn, who, it is alleged, had no

authority to draw the order, the sum of sixteen hundred dollars was paid Seigel & Bobb. We notice some of the bills of sub-contractors were made out against "Milburn & Son," presumably the son who gave the order in question. This son was superintending the work of his father, was more than twenty-one years of age, and the father ratified the act. The amount was due to Seigel & Bobb, and the order was drawn before any notice of liens was served, as we infer from the testimony. It was not paid until January, 1874, but had been accepted verbally two or three months previously, and before any notices for liens had been served. There is no fraud or pretense of fraud charged in these transactions. The money was due the parties who received it, and justice and equity demand it should remain with the recipients.

We now come to the merits of the whole case, and will dispose of the points made by appellant on its appeal.

There were two contracts between the stock yards company and Milburn: One for building a hotel on U. S. survey 627, containing 400 acres, situate near East St. Louis, which bore date July 30, 1872, to go into effect August 2, 1872, and to be fully completed and delivered to appellant on June 1, 1873, the entire work, according to the specifications, to be done and completed for the gross sum of one hundred and one thousand two hundred and fifty-seven dollars and ninety-six cents, to be paid in installments, two of fifteen thousand dollars each, one of sixteen thousand five hundred dollars, one of eight thousand dollars, two of ten thousand dollars each, and the last one, thirteen thousand seven hundred and fifty-seven dollars and ninety-six cents, was as balance, when all was finished, the keys delivered up, and the building received by the architects and superintendents as completely finished according to plans and specifications; and it was provided, that for every day's delay beyond the first day of June, the contractor, Milburn, should pay appellant one hundred dollars per day, as liquidated damages.

The contract for the bank building to be on the same lot of ground, bears date October 30, 1872, and provides for finishing

the building by the first day of May, 1873, for the gross sum of forty thousand four hundred and forty-seven dollars, payable in installments, four of them of seven thousand dollars each, and another one of twelve thousand four hundred and forty-seven dollars, on the delivery of the building all complete; and if not so delivered, Milburn was to forfeit twenty-five dollars per day for each and every day, from and after that time, during which the building should remain unfinished, and not completed and delivered, to be deducted from the money to be paid Milburn under the contract.

Appellant makes three principal points: First, the subcontractors have not established their liens, as claimed, respectively; second, there should have been separate findings for what might be due, if anything, on the hotel contract and on the bank contract; third, appellant is entitled to and should have been allowed one hundred dollars per day as liquidated damages, provided in the contract, for every day's delay in completing the hotel building after June 1, 1873, and to twenty-five dollars per day for every day's delay in completing the bank building after May 1, 1873.

It is insisted, notice was not given by the sub-contractors within twenty days from the completion of the sub-contract, or within twenty days after payment should have been made for the work under the sub-contract. Sec. 2, of act of 1869. This is the statute, and it is conceded a lien can not be created outside of the statute, or extend beyond its terms.

There is much testimony as to the precise time when the work was completed. It is admitted the notice of the Mississippi Planing Mill Company was in time. As to the other sub-contractors, complainant O'Reilly testifies he completed his work plastering the hotel building on November 6, 1873, and on the bank building on the same day, and gave the notice on the tenth day of November. From the examination we have been able to give the testimony, we are of opinion, with the special master and circuit court, the several notices were in time. It is admitted, if the time of giving notices is to be computed from the day the respective buildings were to be

completed, they were insufficient; but appellant insists they were not, nor was either of them, completed within the time, and they are claiming damages for the delay. The question then is, when were they completed? It was discovered, after possession was taken of both buildings, defects and omissions were discernible, which the sub-contractors supplied. Taking this as the period when the buildings were actually and fully completed by the sub-contractors, their several notices are in time.

We are not disposed to consider these orders from the architect to supply these defects and omissions, and make the buildings complete and finished according to the contract, were done for the purpose of reviving a lien which had been lost, but that the real truth of the matter is, there was no final completion of the buildings until these defects and omissions were supplied. The architect directed the additional work to be done, and the contracts can not be said to have been completed until such work was done, and when done, the time of doing it is the point from which to measure the time of notice.

As to the second point, there was no error in treating the two contracts as one, as the two buildings were erected on the same tract of land. It is not like the case decided by this court, where the petition for a lien was for constructing buildings on different town lots. In such case it was held, there should be a separate accounting and decree for each lot.

Upon the last point, we are of opinion, although the contract for the hotel building provides one hundred dollars per day as liquidated damages for the delay, and in the bank contract twenty-five dollars, to be deducted from the amounts due Milburn, yet when this cause was about to be referred to the master, certain matters only, of which this claim for damages was not one, were submitted to him, this claim not being then set up, and it was expressly waived by the president of the company, who declared to Milburn, as the delay was owing to the ordering of extra work by the architect, and they had possession of both buildings, enjoying the rents and profits, no charge would be brought against him for the delay. It would

be unjust and unreasonable so to claim, as president Allerton thought, and as we think, the stock yards company being in full possession.

No question has ever been made about this claim for damages, until it first appears in appellant's answer to complainant's bill. We can not believe, from all the circumstances shown in evidence, that it was ever seriously intended to make this claim. But be this as it may, we do not think it has any foundation in justice and right, in view of surrounding circumstances.

Something has been urged by appellant about the extent of the lien as concerns the entire survey, which is said to contain four hundred acres. How these premises are located, with respect to the boundaries of this survey 627, is not shown. The statute declares there shall be a lien on the lot or tract of land on which the erections are made. In this respect, the decree follows the statute.

We find no error in the record, and affirm the decree.

*Decree affirmed.*