## AVERY v. BUTLER.
(47 Pac. 706.)

TIME FOR FILING MECHANIC'S LIEN—"REPAIRS" AND "OMISSIONS" DISTINGUISHED.—Where a building has been, by the owner or his agent, accepted as completed in accordance with the requirements of the building contract, the renewing by the contractor of defects caused by inferior workmanship or material, discovered after the acceptance, is considered a repair rather than an omission, and the time for filing a lien will begin to run from the date when the building was accepted, and not from the date when the repairs were completed, though the rule may be otherwise where work required by the contract has been omitted.

From Multnomah:   MICHAEL G. MUNLY, Judge.

Suit by Avery & Opdycke against Butler & Dill, and others, to foreclose a mechanics' lien. The Builders' Sash & Door Mfg. Co. intervened to foreclose a lien, and from a decree dismissing its claims it appeals.

AFFIRMED.

For appellant there was a brief over the name of *Gammans & Lamson*, with an oral argument by *Mr. Geo. G. Gammans.*

For respondent there was a brief over the name of *Snow & McCamant*, with an oral argument by *Mr. Wallace McCamant.*

Opinion by Mr. Chief Justice Moore.

This is a suit to foreclose a mechanics' lien upon a house and lot at Piedmont, Multnomah County, the property of the defendant the Investment Company, a corporation, but which it had agreed to sell and convey to the defendant Ben C. Irwin. The material facts are that on August 8, 1892, the Investment Company entered into a contract with the defendants Butler & Dill, by which the latter agreed to furnish the material and erect a house on said lot in consideration of $2,312, $1,500 to be paid as the work progressed, $406 when the house was entirely completed and accepted, and $406 thirty-five days after such final acceptance and surrender of the building to the owner. The contract, in referring to the manner and effect of such payments, contained the following stipulation: "It is also provided that in each of said cases a certificate be obtained and signed by the said F. Manson White, architect, none of which payments, except the final one, shall be considered as or understood to be an acceptance of any part or portion of the works herein agreed for." On November 28, 1892, Butler & Dill, claiming to have complied with the terms of the contract, quit working on the building, and on the 8th of the next month the architect, deeming it completed in accordance with the terms of the agreement, executed to the contractors a certificate for $406, whereupon Irwin with his family took possession, and thereafter continued to occupy the house. The architect, in preparing the plans and specifications, omitted the window blinds, and, at his own expense, agreed to procure them, and, having done so, Butler & Dill, on December 13, returned and hung them, completing the work on the 19th of that month. The finishing lumber used in the building having begun to shrink, the architect, on December 18, wrote to the

contractors as follows: "I hereby notify you that I have rejected much of the mill work on the residence you are building at Piedmont for the Investment Company. All the doors, with one exception, are cracked and checked. The windows do not fit, and the trim has opened at all joinings. The work must be rectified at once, or it will be done at your expense." Thereafter he gave them a list of the imperfect material which he rejected, and notified them that the work must be made good before he could accept it, and on January 16, 1893, sent them the following notice: "You are hereby notified to proceed and complete the work on the residence you are building for the Investment Company at Piedmont. If this notice is not complied with within three days, we will, as agreed in contract, have the work done ourselves, and have the same charged to you." Butler & Dill, upon the receipt of these notices, thereafter removed the defective and supplied other and better material, completing the repairs on April 30, 1893. The plaintiffs allege that they furnished to Butler & Dill certain material to be used in the construction of said house, and, having perfected a lien thereon, commenced this suit for its foreclosure, alleging in their complaint that the defendant, the Builders' Sash & Door Manufacturing Company, a corporation, claimed some lien upon the premises, to which said company made answer in the nature of a cross-bill, alleging that it furnished to the contractors certain material to be used in the erection of the house, and to secure the payment of the amount due therefor, on May 26, 1893, and within thirty days from the completion of the building, filed its claim of lien in the proper office, and prayed that the same might be foreclosed. The Investment Company and Irwin, after denying the material allegations of the cross-bill, for further answer thereto, allege that the material so furnished by the Builders' Sash & Door Manufacturing

Company did not comply with the plans and specifications; that, after expending large sums in placing said material in the building, they were obliged to and did remove it therefrom, and replace it with other and suitable material; and that, having been compelled to do so, they had been damaged thereby in the sum of $500, for which they prayed a decree. A reply having put in issue the allegations of new matter contained in the answer, a trial was had, at which the court, upon stipulation, dismissed the plaintiff's suit, and the cross-bills of some other lien claimants, and, having found that the cost of making the changes was greater than the amount claimed by the Builders' Sash & Door Manufacturing Company, decreed a dismissal of its cross-bill also, from which it appeals.

Counsel for the appellant contend that the court erred in its findings of fact, while it is maintained by counsel for the Investment Company and Irwin that the claim of lien now sought to be enforced was not filed within the time prescribed by law, and for this reason the decree should be affirmed. The certificate which called for the payment of the installment evidencing the final completion of the building having been obtained by Butler & Dill, they, on December 8, 1892, surrendered to the owner the possession of the property. From these facts it is evident that on this date each party considered the building entirely completed, as far as the contract was concerned, and the architect, having examined the house and being satisfied with the workmanship and material, accepted the same, although he thereafter wrote to the contractors requiring them "to proceed and complete the work," implying thereby that the building had not been completed; but, in view of the circumstances and acts of the parties, we deem the language a request to repair, rather than a demand to complete the building, for, at

the time this certificate was given, the defects in the material used in the building were not apparent, but, as the lumber seasoned, it began to shrink and check, thereby exhibiting its imperfections, upon the discovery of which the architect demanded that it should be removed, and better material substituted therefor. If the defects had been manifest from an inspection of the work at the date of the certificate, it must be presumed that the architect would not have given it to the builders, but, having done so, we must conclude he considered the building completed, as far as the contract was concerned, for, as a witness, he testifies that when the certificate was issued "the work was completed as called for in the contract." It is true that Butler & Dill thereafter returned and hung the blinds, finishing the work on December 19, 1892, but, the architect having omitted them from the plans and specifications, this evidently was not a part of their original contract, and the certificate ought to be treated as evidence of the acceptance of their work, unless the provisions of the contract preclude such a construction. The final payment was to have been made thirty-five days after December 8, 1892, but, upon the discovery of the imperfections in the material, it was delayed until after April 30 of the next year, when the repairs were completed. The acceptance of the building must be determined as a question of fact. The stipulation in the contract to the effect that none but the final payment should be construed or understood to be an acceptance of any portion of the work was for the protection of the owner, and could, of course, be waived by him. Viewed in this light, it must be admitted, we think, that on December 8, 1892, the Investment Company, by its agent, F. Manson White, the architect, believing that Butler & Dill had fully performed their part of the contract, accepted the building, and issued to them a certificate evidencing this

fact. The blinds were not hung, however, until December 19, 1892, at which time the building was fully completed, unless the work thereafter done by Butler & Dill, in removing and substituting other material, served to postpone such completion until April 30, 1893.

This brings us to a consideration of the question whether, after a building which is sought to be subjected to the payment of a claim for labor and material has been accepted as completed according to the terms of the contract for its construction, the renewal or repair of some of its parts upon a discovery of their defects will extend the time for filing a lien otherwise excluded by lapse of time. While there is seemingly a conflict of authority upon this question, we think the better reason supports the rule that, after a structure has been completed, inspected, and approved by the owner or his lawful agent, any latent defects existing in the material or workmanship that may be cured by the builder upon the request of the owner, are to be considered as repairs, and not omissions in the performance of the original contract. When work demanded by the terms of the original contract has been omitted, the final completion of the structure dates from the time such omissions are supplied by the builder at the request of the owner, although in the meantime the latter may have taken possession of the property *(St. Louis National Stock Yards* v. *O'Reilly,* 85 Ill. 546; *Holden* v. *Winslow,* 18 Pa. St. 160); the rule seeming to be that while there is anything to do which it is the duty of the builder to perform, under the terms of the contract, the work upon which he is engaged is not completed until this obligation is accomplished *(Watts-Campbell Co.* v. *Yuengling,* 51 Hun. 302, 3 N. Y. Supp. 869); so that, if the window blinds were demanded by the terms of the original contract, the house could not be considered completed until they were supplied. So, too,

when the builder, after a substantial completion of the structure, at the request of the owner, makes additions to it which are useful or necessary to its enjoyment, the final completion dates from the time such additions are made: *Hofer's Appeal*, 116 Pa. St. 360 (9 Atl. 441); *Nichols* v. *Culver*, 51 Conn. 177. When the work has been apparently completed, but not accepted, the restoration by the builder of a part to which objection has been made is considered as a substitution under the terms of the original agreement, and not a repair, and therefore the statute begins to run only from the final completion of the imperfectly formed obligation: *Bruce* v. *Berg*, 8 Mo. App. 204; *Scott* v. *Cook*, 8 Mo. App. 193; *Worthen* v. *Cleaveland*, 129 Mass. 570; *Harrison* v. *Homeopathic Association*, 134 Pa. St. 558 (19 Atl. 804, 19 Am. St. Rep. 714); *Jeffersonville Water-Supply Co.* v. *Riter*, 138 Ind. 170 (37 N. E. 652). But, after a building has been accepted, repairs made thereon will not revive a lien for labor performed upon or materials furnished to be used in the structure prior to such acceptance: *Berry* v. *Turner*, 45 Wis. 105; *Dunn* v. *McKee*, 5 Sneed, 657. In *Conlee* v. *Clark* (Ind. app.), 42 N. E. 762, the Supreme Court of Indiana reached a different conclusion, which is much weakened, however, by the fact that two of the judges dissented from the opinion announced by the majority. The latter rule also prevails in California: *McIntyre* v. *Trautner*, 63 Cal. 429. In the case at bar, the house, in our judgment, was completed on December 19, 1892, when the blinds were hung, and any work thereafter done must be considered as repairs, and the notice of lien of the sash and door company, not having been filed within thirty days from the completion of the building, was not filed within the time prescribed by law *(Ainslie* v. *Kohn*, 16 Or. 363, 19 Pac. 97); and hence the decree is affirmed.

Affirmed.