Argued 19 April, decided 16 May, 1904.

### HOBKIRK *v.* PORTLAND BASEBALL CLUB.

[76 Pac. 776.]

MECHANICS' LIEN — EXTENDING TIME TO FILE LIEN BY EXTRA WORK.
Where a building contractor completed his contract with a tenant of land,

and removed his tools and plant, and the tenant conceded that the work was finished at that time, the subsequent employment of the contractor to perform additional work on the land does not extend the time within which the contractor is entitled to file a mechanics' lien as against the owner of the land.

From Multnomah: MELVIN C. GEORGE, Judge.

This is a suit by Peter Hobkirk against the Portland National Baseball Club and others, and the Hawthorne Estate, for the foreclosure of a mechanics' lien. From a decree in favor of plaintiff, the Hawthorne Estate appeals.

REVERSED.

For appellant there was a brief and an oral argument by *Mr. Whitney L. Boise* and *Mr. John T. McKee.*

For respondent there was a brief over the name of *Dolph, Mallory, Simon & Gearin,* with an oral argument by *Mr. Joseph Simon.*

MR. JUSTICE BEAN delivered the opinion of the court.

This is a suit to foreclose a mechanic's lien. About January 1, 1903, the defendant the Hawthorne Estate leased to W. H. Lucas, for the use of the defendant the Portland National Baseball Club, a corporation thereafter to be organized, certain property in East Portland for a baseball field. In March the plaintiff entered into a written contract with the defendants Grim and Drake, acting on behalf of Lucas and the proposed corporation, to furnish the material and labor necessary for the construction of a "grand stand, bleachers, and fences on and surrounding" the property, according to certain plans and specifications, for the sum of $3,900, 50 per cent of which was to be paid when the work was completed, and the remainder on or before July 1, 1903. Upon the subsequent organization of the defendant corporation it ratified and approved the lease from the Hawthorne Estate to Lucas, and also the contract between the plaintiff and Drake and Grim. By the terms of the latter the work was to be done under the direction and to the satisfaction of Grim, the superintendent and man-

ager of the baseball club, and to be completed by the 15th of April. On the 18th the plaintiff and Grim both reported to the corporation that the contract had been completed, and thereupon plaintiff was paid $1,500 in money, and given a credit of $500 on his subscription to the capital stock of the corporation. No further payments were made on the contract, and on July 3d the plaintiff filed a mechanic's lien on the grand stand, bleachers, fences, and the land upon which they were constructed, for $2,150, being the balance due on the contract, and the alleged reasonable value of certain extra work performed by him.

There are several important questions presented, but the only one necessary for us to consider is whether, as against the Hawthorne Estate, the lien was filed within 60 days after the completion of the work. As will be observed, a single lien is claimed for the balance due on the original contract, and for the value of all the extra work performed by the plaintiff. As we understand the record, all the work called for by the contract, as well as all the extra and additional work ordered from time to time, was fully completed and accepted by the 25th of April, except about three days' work for two men from the 7th to the 9th of May in putting lockers for the wardrobes of the players in an old building on the ground belonging to the club, boxing in and inclosing some toilets, and putting a new roof on the grand stand. None of this work was included in or is a part of the original contract. The plaintiff testifies that during the progress of the work he built from time to time, as directed by the officers of the corporation, two ticket offices, a refreshment stand, fences in front of the bleachers, two flights of stairs, gates, toilets under the grand stand, and lockers; that the lockers were fitted up in an old building belonging to the club, with which he had nothing to do under his original contract; that the first series of games on the grounds began on the 14th of April,

and on the 18th he told the president of the club that his
contract was completed, and that he was entitled to the
payment as provided therein, and that such payment was
thereupon made; that he moved his tools and plant from
the job on the 25th of April, and no further work was done
by him until the 7th of May, when he sent two men to fit
up the lockers and inclose the toilets, which the officers
of the club had in the meantime put in under the grand
stand; that, after the work had been completed and the
first payment made, the wind blew the roof off the grand
stand, owing to the inferior roofing material called for by
the specifications, and he was employed to put on a new
roof, and such work was not completed until some time in
May.

Doctor Drake, the president of the club, testifies that the
payment was made to the plaintiff upon the representa-
tions of both himself and Grim, the superintendent, that
the contract was completed; that a series of games was
played on the ground from the 14th to the 19th of April,
inclusive, when the local team, accompanied by Grim, went
to Tacoma and Seattle, and was absent from Portland for
about two weeks; that during that time the roof of the
grand stand blew off, and he spoke to the plaintiff about
replacing it, but the plaintiff refused to do it at his own
expense, because he had fulfilled the terms of his contract,
and the defective roof was not due to his fault; that after
consulting some of the directors of the club the plaintiff
was employed to put on a new roof at the club's expense;
that after Grim returned from the Sound he had the lock-
ers put in, the toilets inclosed, and the roof replaced. Grim
testifies that the plaintiff's contract was completed about
the 15th of April, or during that week, and that he (wit-
ness) advised the president of the club to that effect; that
just before leaving for the Sound, and after the plaintiff
had been paid the amount due him under his original con-

tract, the plaintiff was directed by him to put in the lockers and inclose the toilets; that the work was done some two weeks later after he returned from the Sound.

From this testimony the conclusion is irresistible that the plaintiff's original contract, as well as all extra work connected therewith, was completed on or prior to the 25th of April. The plaintiff and the superintendent of the work both so represented to the officers of the club. On this assumption the plaintiff was paid the amount due him under the contract, and he removed his tools and plant from the job, and the corporation went into the exclusive possession of the property. The work afterward performed on the lockers, toilets, and roof was no part of the original contract, but was done under separate and independent contracts made after the completion of the original work. Grim testifies, and his testimony is not contradicted, that the plaintiff was employed to put in the toilets and lockers after the original contract was completed, and after he had received the payment due thereon. This additional work was therefore not connected with or a part of the original contract, nor was the putting on of the new roof a part of such contract. It was under an independent contract made after the original was completed. When extra work is done or material furnished by a contractor during the performance of his agreement, as a part of or in furtherance of the same general object, it will be deemed, for the purpose of a mechanic's lien, a part of the original contract, and the time in which to file the lien for the amount due on the contract and the extra work will commence to run from the date of the completion of the work as a whole: Phillips, Mech. Liens, (3 ed.) § 229; *Union Trust Co.* v. *Casserly*, 127 Mich. 183 (86 N. W. 545); *Perkins* v. *Boyd,* — Colo. App. — (65 Pac. 350); *Rush* v. *Able*, 90 Pa. 153; *National Stock Yards* v. *O'Reilly*, 85 Ill. 546. But the performance

of other or additional work by the original contractor after the completion of his contract cannot be tacked to or connected therewith so as to extend the time for the filing of a lien therefor : *Avery* v. *Butler,* 30 Or. 287, 290 (47 Pac. 706); *Livermore* v. *Wright,* 33 Mo. 31. We conclude, therefore, that, as against the Hawthorn Estate, the lien of plaintiff was not filed within the time required by the statute, and that the decree against it must be reversed.

REVERSED.