POWERS, J.
*350 In this case involving a construction lien, Portland General Electric Company (PGE) appeals from a limited judgment in favor of Bethlehem Construction, Inc., which the trial court entered after granting summary judgment for Bethlehem on its lien foreclosure claim.[1] PGE contends that the trial court erred in granting summary judgment to Bethlehem and denying it to PGE because the lien was not recorded within 75 days after Bethlehem "ceased to provide labor, rent equipment or furnish materials," as required by ORS 87.035(1). We conclude that the trial court did not err and, accordingly, affirm.
The facts are undisputed. PGE contracted with Abeinsa Abener Teyma General Partnership (Abeinsa) for construction of a power plant in Boardman, Oregon, known as the Carty Generating Station. Abeinsa subcontracted with Bethlehem by entering into a purchase order in which Bethlehem agreed to produce and deliver precast concrete panels *20 to be used as part of the generation building. The contract price was $122,851. Bethlehem produced and delivered the panels, completing the work required by the purchase order in April 2015 and submitting its final billing to Abeinsa.
In December 2015, Abeinsa contacted Bethlehem by email with a request for additional work. Another contractor had drilled through a prestressed strand in one of the concrete panels, and Abeinsa requested an engineering opinion on whether the damage compromised the panel's ability to bear the necessary load. The parties agreed to a change order to the original contract; the cost for the additional work was $578.13. The next day, December 15, 2015, Bethlehem provided the engineering opinion.
PGE terminated its contract with Abeinsa on December 18, 2015. On January 11, 2016, Bethlehem recorded its lien, which covers both the original contract for the fabrication of the concrete panels and the change order for the *351 engineering analysis. Abeinsa did not pay Bethlehem the final payment due under the original contract or the amount due under the change order.
In February 2016, PGE, now acting as its own general contractor, contacted Bethlehem for an engineering opinion about a design change affecting the concrete panels. PGE and Bethlehem agreed to a second change order, Bethlehem provided the engineering opinion, and PGE paid Bethlehem the amount due under the second change order.
Bethlehem filed this action, asserting, among other things, a lien foreclosure claim, and the parties filed cross motions for summary judgment on that claim. The trial court concluded that Bethlehem did not cease to provide labor or furnish materials within the meaning of ORS 87.035(1) until it performed the additional work requested by Abeinsa in December 2015, pursuant to the first change order. Accordingly, the court concluded that Bethlehem's lien, recorded in January 2016, was timely, and the court granted summary judgment for Bethlehem and denied summary judgment for PGE.
On appeal, PGE contends that the trial court erred in concluding that Bethlehem's additional work in December renewed its lien rights as to the work it undertook earlier in the year. PGE's argument is twofold: First, it contends that the December work could not revive Bethlehem's lien rights because the work under the original contract was complete in April; it asserts that the earlier work and the later work took place under separate contracts, as a matter of law. Second, PGE asserts that the December work was trivial or trifling and, consequently, under Oregon case law, was insufficient to revive the lien claim.
On appeal of a judgment disposing of cross motions for summary judgment, we review "to determine whether there are any disputed issues of material fact and whether either party was entitled to judgment as a matter of law." Hynix Semiconductor Mfg. America v. EWEB , 276 Or. App. 228, 230-31, 367 P.3d 927 (2016) (internal quotation marks omitted); see also ORCP 47 C (providing standards for summary judgment).
*352 ORS 87.035(1) requires a construction lien claimant like Bethlehem to record the lien "not later than 75 days after the person has ceased to provide labor, rent equipment or furnish materials or 75 days after completion of construction, whichever is earlier." Here, as noted above, the only question is when Bethlehem ceased to provide labor or furnish materials.[2] To answer that question, we consult the substantial body of case law addressing it. See Pro Excavating, Inc. v. Ziebart , 148 Or. App. 436, 439, 939 P.2d 1187 (1997) (answering the same question by reference to case law).
"For purposes of [ ORS 87.035(1) ], the date on which the 75-day period begins to run is the date on which the person's contribution to the project is 'substantially complete.' " Id. We and the Supreme Court have frequently considered the effect on construction lien rights when a contractor performs all or nearly all of the work required under a *21 contract, stops work for a period of time sufficient for lien rights to lapse, and later performs some more work and files a lien for all of the work. Bethlehem points out that, in Avery v. Butler , 30 Or. 287, 293, 47 P. 706 (1897), the Supreme Court held that, "when the builder, after a substantial completion of the structure, at the request of the owner, makes additions to it which are useful or necessary to its enjoyment, the final completion dates from the time such additions are made." See also Farrell v. Lacey , 264 Or. 505, 511, 507 P.2d 31 (1973) (quoting and applying that rule from Avery ). In Bethlehem's view, that rule applies here, and, thus, the lien was timely.
On the other hand, PGE relies on Hobkirk v. Portland B. B. Club , 44 Or. 605, 76 P. 776 (1904), and Spaeth v. Becktell , 150 Or. 111, 41 P.2d 1064 (1935). In Hobkirk , the Supreme Court held that a contractor's replacement of the roof of a baseball stadium (which he had built not long before) and other work that he performed after he completed the work in his original contract did not revive his right to a lien for the initial work.
*353 There, the court explained,
"When extra work is done or material furnished by a contractor during the performance of his agreement, as a part of or in furtherance of the same general object, it will be deemed, for the purpose of a mechanic's lien, a part of the original contract, and the time in which to file the lien for the amount due on the contract and the extra work will commence to run from the date of the completion of the work as a whole. But the performance of other or additional work by the original contractor after the completion of his contract cannot be tacked to or connected therewith so as to extend the time for the filing of a lien therefor."
Id. at 609-10, 76 P. 776 (citations omitted). In that case, the court found, the later-performed work "was no part of the original contract, but was done under separate and independent contracts made after the completion of the original work." Id. at 609, 76 P. 776.
In Spaeth , the court quoted the rule as follows:
" 'Where work, distinct in its nature, is performed at different times, the law supposes it to have been performed under distinct engagements, as where the work at one time is for building and at another time for repairing. So where two distinct contracts are in fact made, as for different parts of the work, the work done under each contract must be considered as entire of itself. But when work or material is done or furnished, all going to the same general purpose, as the building of a house or any of its parts, though such work be done or ordered at different times, yet if the several parts form an entire whole, or are so connected together as to show that the parties had it in contemplation that the whole should form but one, and not distinct matters of settlement, the whole account must be treated as a unit, or as being but a single contract.' "
150 Or. at 115, 41 P.2d 1064 (quoting Samuel Louis Phillips, A Treatise on the Law of Mechanics' Liens on Real and Personal Property § 229 (3d ed. 1893)). Applying that rule to the facts of the case, the court rejected the lien claimant's argument that the parties had entered into a continuing contract for "the construction, alteration, and repair" of a hotel, explaining that it was "unable to conclude that the various items listed in the notice of lien were contemplated by the parties to be *354 considered as part of one entire continuous contract." Id. at 120, 41 P.2d 1064.
PGE contends that, under those cases, Bethlehem's lien rights as to the initial work were not revived by the later work because Bethlehem completed its work under the initial contract before the parties agreed to the first change order. PGE asserts that that timing means that, as a matter of law, the initial work and the work under the change order were done under independent contracts.
We agree with PGE's assertion that the dispositive question in Hobkirk and Spaeth was whether the work was all performed under a single contract or whether it was done under separate, independent contracts. However, when the court addressed the timing of the work in those cases, it was because, *22 in those cases, written contracts did not reveal the full scope of the parties' agreements. Hobkirk , 44 Or. at 608-09, 76 P. 776 (explaining the initial contract, oral additions to that contract during construction, and later agreements for other work); Spaeth , 150 Or. at 116, 41 P.2d 1064 (describing the oral contract on which the plaintiff's theory was based). Thus, the court looked to all of the evidence, including timing, to ascertain what the parties intended. See, e.g. , Spaeth , 150 Or. at 120, 41 P.2d 1064 (concluding that the timing, as well as other aspects of the evidence, indicated that not all of the line items were "contemplated by the parties to be considered as a part of one entire continuous contract").
By contrast, here, Abeinsa and Bethlehem fully expressed their intentions through the change order. The document was entitled "Change Order Request," had the original contract number and name in the "reference" field, and specified the "scope of change" to the original contract. That document evidences Abeinsa and Bethlehem's shared intention that the later work and the earlier work comprised two parts of one single contract. See Black's Law Dictionary 281 (10th ed. 2009) (defining "change order" as "[a] modification of a previously ordered item or service"). PGE submitted no evidence suggesting that, despite the terms of the change order, any of the parties intended the December work not to be part of the initial contract. Thus, on this record, no rational trier of fact could conclude that Abeinsa and *355 Bethlehem intended the December work to take place under a separate contract.
We turn to PGE's second contention, which is that the December work was trivial or trifling and, consequently, was insufficient to revive Bethlehem's lien rights. We have explained that rule as follows: "A contractor does not extend the time to file a lien by returning to a job to perform some trifling work or a few odds and ends after apparently completing the job and removing its equipment." Ziebart , 148 Or. App. at 441, 939 P.2d 1187 (citation and internal quotation marks omitted).
In response to PGE's argument, Bethlehem points out that the purpose of requiring later-performed work to be more than trivial to revive lien rights is to prevent contractors from doing all but the smallest details of their contracted work and leaving those details undone as a kind of reserve to revive their lien rights, if that proves to be necessary. Bethlehem argues that that purpose indicates that the rule does not apply when work is added to a contract later, after the initial work has been fully or partially performed.
We need not resolve that dispute, however, because we conclude that, even assuming that the requirement that the later-performed work not be merely trivial applies here, the additional work in this case was not trivial. In Ziebart , we explained that "cost alone does not determine if work is trifling." 148 Or. App. at 441, 939 P.2d 1187 (internal quotation marks omitted). Where the contract specifically requires certain work to be completed and that work is significant to the project, the work is not trivial or trifling. See id. at 442, 939 P.2d 1187 (evidence that the plaintiff lien claimant was "required to erect * * * signs and barricades pursuant to the contract, and [the engineer's representative] asserted that that work was critical to the project and to plaintiff's contractual obligations," created a question of fact as to whether the work was trivial, where there was also evidence to the contrary); see also Steven G. M. Stein, 3 Construction Law ¶ 9.08(1) (LexisNexis Matthew Bender 2016) ("Generally, remedial punch list or minor additional work will not extend the time period under the act. The type of work necessary to extend the time period must be of a significant nature and in furtherance of *356 the contract, not merely an attempt to toll the time period." (Footnote omitted.)).
Here, the record shows that the later-performed work was directly related to the original work and in furtherance of Bethlehem's contractual obligation to provide precast concrete panels that would perform a particular structural function as part of the generation building. As explained above, the December work was specifically required by the contract, as modified by the change order. And the December work was significant *23 because, absent the engineering opinion, Abeinsa could not rely on the panels to perform that structural function.[3] Finally, on this record, the relatively low cost of the later work does not change the analysis. See Ziebart , 148 Or. App. at 440-41, 939 P.2d 1187, (noting that cost alone does not answer the question and concluding that the work could be substantial, not trivial, where the contract was for more than $400,000 and the later work cost less than $2,500). On these undisputed facts, no rational trier of fact could find that the additional work was trivial.
Thus, the December work was performed under the same contract as the April work, and it was not trivial. Consequently, Bethlehem recorded its lien within 75 days of the time when it "ceased to provide labor, rent equipment or furnish materials," as required by ORS 87.035(1). The trial court did not err in granting Bethlehem's motion for summary judgement or in denying PGE's motion.
Affirmed.

Bethlehem's two other claims remain pending. The lien foreclosure claim was the sole subject of the summary judgment motions, and the other claims are not at issue on appeal.

PGE has not developed any argument that Bethlehem did not "provide labor" or "furnish materials" by providing the engineering opinion. ORS 87.035(1). Consequently, we do not consider that possibility.

We conclude that the additional work was not warrant work or traditional repair work, which generally does not revive lien rights, see, e.g. , Christenson v. Behrens , 231 Or. 458, 466-67, 372 P.2d 494 (1962), because it is undisputed that another contractor, not Bethlehem, caused the damage.