No. 149 February 25, 2026 465

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of the Petition of
Adam KHOSROABADI,
Lisa Batey, Desi Nicodemus, Kathy Hyzy,
and Mark Gamba, as the City Council of the City of
Milwaukie, an Oregon Municipality, for the
Judicial Examination and Judgment of the Court as to
the Validity of a City to withdraw from a Service District
pursuant to an Intergovernmental Agreement,
*Petitioners-Appellants,*

*v.*

NORTH CLACKAMAS PARKS AND
RECREATION DISTRICT,
*Respondent-Respondent.*

Clackamas County Circuit Court
22CV22550; A181673

Jeffrey S. Jones, Judge.

Argued and submitted December 5, 2024.

Casey M. Nokes argued the cause for appellants. Also on the briefs were Katherine A. London and Cable Huston LLP.

Jeffrey D. Munns argued the cause for respondent. Also on the brief was Stephen L. Madkour.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

POWERS, J.

Reversed and remanded.

**POWERS, J.**

Petitioners, who are members of the Milwaukie City Council acting on behalf of the city, challenge the trial court's denial of their petition to obtain judicial validation of the city's plan for unilateral withdrawal from membership in the North Clackamas Parks and Recreation District ("district"). The city's petition asserted that the intergovernmental agreement that it entered into with the district provided for a unilateral right to withdraw pursuant to ORS 222.524, through a city council vote. On cross-motions for summary judgment, the trial court denied the petition, granted the district's motion for summary judgment, and denied the city's motion for summary judgment, concluding that the city had to withdraw pursuant to ORS 198.870, which requires a vote by the county board. In two assignments of error, the city challenges that ruling. For the reasons described below, we conclude that, although ORS chapter 198 supplies a default framework, here the parties agreed to terms that differed from that default framework using the intergovernmental agreement (IGA) authority under ORS chapter 190, which allowed them to contract the withdrawal terms. Accordingly, we reverse and remand.

We review a judgment disposing of cross-motions for summary judgment to determine whether there are any disputed issues of material fact and whether either party was entitled to judgment as a matter of law. *Bethlehem Construction, Inc. v. PGE*, 298 Or App 348, 351, 447 P3d 18 (2019); *see also* ORCP 47 C (providing the standards for summary judgment).

The relevant facts are few and undisputed. In 1990, the Clackamas County Board of County Commissioners wanted to form the North Clackamas Parks and Recreation District and wanted to have the city participate. The city consented to participating in the district, and the city and the district entered into an IGA on May 1, 1990, memorializing the city's inclusion. The 1990 IGA included a withdrawal provision, providing that the city "may choose at any time to withdraw entirely from the service district subject to legal restrictions established in the Oregon Revised Statutes and Boundary Commission regulations." The district was then

formed on November 6, 1990, by a vote of the Clackamas County residents under the authority of ORS chapter 451.

In 2008, the district and the city signed a second IGA to clarify the roles and relationships of the parties regarding the provision of parks and recreations services. Section VI(4) of the 2008 IGA again provided withdrawal procedures. Specifically, the 2008 IGA provided that the "City may choose at any time to withdraw entirely from the District pursuant to ORS 222.524 or its successor statute." ORS 222.524 allows for withdrawal by a city council vote.[1]

In 2022, the city filed a petition with the trial court seeking validation of the withdrawal process described by Section VI(4) of the 2008 IGA, which allows the city to withdraw from the district at any time pursuant to ORS 222.524. *See generally* ORS 33.710 - 33.720 (outlining jurisdiction and procedures for a validation petition). In its petition, the city contended, among other arguments, that under ORS 190.010, a unit of local government "has the freedom to enter into written agreements with other units of local government for the performance of any or all functions and activities within its authority to perform." Because nothing

---

[1] ORS 222.524 provides, in full:

"(1) If as authorized by ORS 222.520 the governing body of the city elects to cause the withdrawal from a district named in ORS 222.510 of that part of such district theretofore incorporated in or annexed to the city, it shall hold a public hearing on the question of such withdrawal. At the hearing, the governing body of the city shall hear objections to the withdrawal and shall determine whether such withdrawal is for the best interest of the city.

"(2) The governing body shall fix a date, time and place for the hearing and cause notice of the date, time, place and purpose of the hearing to be published once each week for two successive weeks prior to the date of the hearing in a newspaper of general circulation in the city, and shall cause notices of the hearing to be posted in four public places in the city for a like period.

"(3) After the hearing, the governing body of the city may by ordinance declare that the part of the district which was theretofore incorporated as or annexed to the city is withdrawn from the district.

"(4) The ordinance referred to in subsection (3) of this section is subject to referendum.

"(5) The city may withdraw from all of such districts at the same time in one proceeding under this section or may withdraw from each district in separate proceedings at different times.

"(6) The public hearing and ordinance referred to in this section may be the same as the public hearing and ordinance in ORS 222.120."

in ORS chapter 198 expressly prohibited the city from entering into a contract that provides for a withdrawal procedure under ORS 222.254, the city argued that the court should validate the city's authority under ORS 222.254 to withdraw from the district. The district opposed the petition, arguing that Section VI(4) was an unenforceable contract provision and that the city must withdraw using the procedure outlined in ORS 198.870, which requires approval by the county board. On cross-motions for summary judgment, the trial court granted the district's summary judgment motion and denied the city's motion. The court reasoned that ORS 222.524 did not apply because ORS 222.520 provides that ORS 222.524 applies only when a part of district land becomes incorporated as a city or when part of the land of a district is annexed to a city, and neither of those conditions were met.[2] Thus, according to the trial court, despite the terms of the 2008 IGA, the city must use the withdrawal procedure in ORS 198.870, not the procedures in ORS 222.524. The city timely appealed.

On appeal, the parties generally agree on how the statutory frameworks for county service districts in ORS chapter 451 and intergovernmental agreements in ORS chapter 190 operate. Where the parties diverge, however, is how—if at all—those statutory frameworks work together. More specifically, the parties offer competing views on whether the district and the city may contract for the terms of a withdrawal from a service district by means of an intergovernmental agreement. The city argues that the trial court erred in granting summary judgment to the district because ORS 198.870 is inapplicable to the facts of this case and that the 2008 IGA should govern the city's process for withdrawing from the district. In the city's view, intergovernmental agreements give municipal cities broad

---

[2] ORS 222.520(1) provides:

"Whenever a part less than the entire area of a district named in ORS 222.510 becomes incorporated as or annexed to a city in accordance with law and the city, after the incorporation or annexation, will provide for the service to the part of the district that the district provided before the incorporation or annexation, the city may cause the part to be withdrawn from the district in the manner set forth in ORS 222.120 or at any time after the incorporation or annexation in the manner set forth in ORS 222.524. Until withdrawn, the part of the district incorporated as or annexed to the city shall continue to be a part of the district."

authority to govern their local affairs. At oral argument, the city asserted that ORS 190.010 gives the district power as a local government to enter intergovernmental agreements and that ORS 190.020 provides what a district is able to include in that agreement, including giving the district authority to determine the rights of the parties to terminate the agreement. The city also argues that it retains this unilateral authority by home rule and charter authority.

For its part, the district acknowledges the 2008 IGA but contends that it is unenforceable and contrary to the statutory procedures for a city to withdraw from a district. In the district's view, ORS 222.524 can apply only when the ORS 222.520(1) conditions are met—*viz.*, either district property becomes incorporated as or is annexed to a city—neither of which occurred here. The district further asserts that where a city's power is conferred by statute, such as joining or withdrawing from a district, the city must act according to the statutory framework and actions outside that framework are *ultra vires*. *See West Linn Corporate Park v. City of West Linn*, 349 Or 58, 96, 240 P3d 29 (2010) (noting that when "a governmental entity's power is conferred by statute, actions outside the scope of that power are 'extra statutory' and therefore *ultra vires*").

We begin with common ground. The parties agree that the district was established as a county service district under the authority of ORS chapter 451. ORS 451.435(1) provides that "[a]ll district formation and change of organization proceedings shall be initiated, conducted and completed as provided by ORS 198.705 to 198.955." ORS chapter 198 describes procedures for formation, operation, and termination of districts, including withdrawal from a district as described in ORS 198.870.[3] Both parties further acknowledge that there is an additional pathway for withdrawal

---

[3] ORS 198.870, which describes withdrawal procedures, provides, in part:

"(1)(a) When a plan for district improvements is adopted, or any time more than two years after the date of formation of a district or after the date of annexation of territory to a district if petitioner's property is located within the territory annexed, an owner of land included in a district may petition the county board for withdrawal of the property of the owner from the district.

"(b) If the electors of an area within a district wish to withdraw from the district, they may file a petition with the county board.

under ORS 222.524, which governs when either of two conditions precedent are met: (1) when a part of district land becomes incorporated as a city or (2) when part of the land of a district is annexed to a city. ORS 222.520(1). Both parties agree on appeal that neither of those conditions are met here. As noted earlier, the parties diverge on what effect, if any, ORS chapter 190 and the ability to enter into intergovernmental agreements has on the statutory framework for county service districts.

In our view, although ORS chapter 198 supplies a default framework, there is nothing in ORS chapter 190 that indicates it is incompatible with ORS chapter 451. Districts, cities, and other units of local government have broad authority to enter into agreements with other units of government. ORS 190.010 grants districts statutory authority to enter into intergovernmental agreements: "a unit of local government may enter into a written agreement with any other unit or units of local government for the performance of any or all functions and activities that a party to the agreement, its officers or agencies, have authority to perform." Further, ORS 190.020(1) provides that "[a]n agreement under ORS 190.010 shall specify the functions or activities to be performed and by what means they shall be performed."[4] More specifically, ORS 190.020(1)(f) explicitly provides that an IGA shall provide for "[t]he rights of

---

"(2) Petitioners shall cause notice of the petition filing to be given in writing to the district secretary. Within five days after the petition is filed, petitioners shall furnish the secretary with a copy of the petition as filed.

"(3) Except as provided by ORS 198.875, ORS 198.800 to 198.820 apply to proceedings for withdrawal and to the rights, powers and duties of the petitioners and other persons having an interest in the proceeding.

"(4) The county board may approve the petition as presented or it may adjust the boundaries and approve the petition. The petition shall be approved if it has not been, or is not or would not be, feasible for the territory described in the petition to receive service from the district. The petition shall be denied if it appears that it is, or would be, feasible for the territory described in the petition to receive service from the district."

[4] ORS 190.020(1) provides, in full:

"An agreement under ORS 190.010 shall specify the functions or activities to be performed and by what means they shall be performed. Where applicable, the agreement shall provide for:

"(a) The apportionment among the parties to the agreement of the responsibility for providing funds to pay for expenses incurred in the performance of the functions or activities.

the parties to terminate the agreement." Accordingly, ORS 190.010 and ORS 190.020(1)(f) provide an alternative pathway to district formation and, important to this case, an alternative pathway that allows the parties to determine how to terminate their agreement beyond the default procedures provided by ORS chapter 198. Thus, in our view, the statutory authority to enter into an IGA allowed the district to enter into the 1990 IGA and the 2008 IGA and to contract for the terms on how to exit the agreement, which it did here by agreeing to Section VI(4) that specifies that the city "may choose at any time to withdraw pursuant to ORS 222.524 or its successor statute."

Although the district does not argue that it lacked authority to enter into either the 1990 IGA or the 2008 IGA, it maintains that the existence of ORS chapter 198 means that the city has no alternative pathway for withdrawal. The district, however, does not point to statutory language expressing the legislature's intent that ORS chapter 198 exclusively governs or statutory provisions that prohibit an entity from contracting the terms for withdrawal outside of ORS 451.435(1), which provides that a change of organization proceedings "shall be initiated, conducted and completed as provided by ORS 198.705 to 198.955." The legislature certainly could have added language expressing such an intent in ORS chapter 198. *See Rogue Valley Sewer Services v. City of Phoenix*, 357 Or 437, 454-55, 353 P3d 581 (2015) (identifying examples where the legislature "has expressly preempted local regulation of certain areas of law by using the word 'preempt' itself" and "expressed its disapproval of conflicting local laws in equally clear terms" by using explicit language).

In short, ORS chapters 451 and 222 do not create a statutory framework that prevents an intergovernmental

"(b)  The apportionment of fees or other revenue derived from the functions or activities and the manner in which such revenue shall be accounted for.

"(c)  The transfer of personnel and the preservation of their employment benefits.

"(d)  The transfer of possession of or title to real or personal property.

"(e)  The term or duration of the agreement, which may be perpetual.

"(f)  The rights of the parties to terminate the agreement."

agreement from contracting the terms of a withdrawal process. Although ORS chapter 198 supplies a default framework, the parties in this case agreed to terms that differed from that default framework using the IGA authority under ORS chapter 190. Our decision today honors that mutually agreed upon choice. Furthermore, our conclusion obviates the need to address the city's home rule and charter authority arguments. Accordingly, because the district and the city had authority to contract for the terms of the withdrawal, the trial court erred in granting summary judgment to the district and denying the city's motion.

Reversed and remanded.