GILL v. WATERHOUSE.

(Circuit Court of Appeals, Ninth Circuit. August 20, 1917.)

No. 2903.

1. GUARANTY ⬌91—PAYMENT OF GUARANTEED ACCOUNT—EVIDENCE.
   Evidence *held* to show that plaintiff did not buy a guaranteed account, but, at the request of one of the guarantors, paid it.

2. GUARANTY ⬌64, 65—PAYMENT OF GUARANTEED ACCOUNT—EFFECT.
   A guaranteed account being not bought but paid by plaintiff at request of one of the guarantors, it and the guaranty are thereby satisfied.

3. GUARANTY ⬌64, 65—PAYMENT OF ACCOUNT—REVIVAL.
   A guaranteed account, with the guaranty satisfied by payment thereof by plaintiff at request of one of the guarantors, is not revived by subsequent assignment thereof to him.

4. TRIAL ⬌139(1)—TAKING CASE FROM JURY—INSUFFICIENT EVIDENCE.
   A case is properly taken from the jury and dismissed where the evidence, conceding all the inferences which the jury can justifiably draw from it, is insufficient to warrant a verdict.

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Action by John Gill, for whom has been substituted Maurice McMicken, his administrator with the will annexed, against Frank Water-

house. There was a judgment of dismissal, and plaintiff brings error. Affirmed.

It appears by the complaint herein that the Commercial Bank of Scotland, Limited, with its principal place of business at Edinburgh, Scotland, agreed to make to Frank Waterhouse, Limited, a corporation doing business in London, certain further advances upon being guaranteed by the defendant Frank Waterhouse the payment of such advances as had theretofore been made, as well as such as should thereafter be made, not to exceed £21,000, and that thereupon the defendant executed the following guaranty:

"To The Commercial Bank of Scotland, Limited. I, Frank Waterhouse, Tacoma, Washington, United States, America, hereby guarantee you payment of all sums for which Frank Waterhouse, Limited, of one hundred and forty-seven Cannon street, London, whether on an account or accounts kept in their name in your books and operated on for them by checks or drafts signed by two of their directors and their secretary, all for the time, or on bills, promissory notes or other obligations, are or may be liable to you, but the amount for which I shall be liable under this guaranty shall not exceed twenty-one thousand pounds sterling with interest from the date or dates at which the said Frank Waterhouse, Limited, have become or shall become indebted to you; and I declare (1) that you shall be entitled to require from me whenever you think fit, a payment or payments to account of my liability; (2) that you may grant to the said Frank Waterhouse, Limited, or to the obligants in any bills of exchange or promissory notes, or other writings received by you from them, or in which they may be liable to you, time or other indulgence, and compound with them or such obligants, and may give up any securities which you now have or may hereafter have belonging to the said Frank Waterhouse, Limited, or to others, all without consulting me, and without affecting my obligation to you; (3) that I shall not be entitled to rank on the estate of the said Frank Waterhouse, Limited, in respect to any payment or payments to account as aforesaid, nor to have the benefit of any securities such as aforesaid until your whole claims against them are satisfied; and (4) that this guaranty is a continuing obligation and can be recalled by me only by writing and shall remain in force notwithstanding my death until recalled in writing, and shall apply to all sums for which the said Frank Waterhouse, Limited, shall become indebted to you prior to such recall."

It then further appears that the bank advanced large sums to Frank Waterhouse, Limited, and, that concern having failed to repay the same, that demand was made upon the defendant, on October 31, 1906, for payment under his guaranty, which was refused, and that the bank, prior to the commencement of this action, assigned the demand to plaintiff's testator.

The defendant pleads payment of the demand prior to any assignment of the letter of guaranty, and avers that, at the time of the execution and delivery thereof, other letters of guaranty of like import were executed, for the same purpose and to secure the same indebtedness, and delivered to the bank, all of which letters, including that of the defendant, were accepted by the bank; and that the bank, subsequent thereto, released all the other guarantors from liability.

At the close of plaintiff's testimony the defendant moved for a dismissal of the cause on the ground that the testimony adduced was insufficient to warrant a verdict in favor of plaintiff. The motion was allowed, and judgment rendered accordingly.

Otto B. Rupp and Hughes, McMicken, Dovell & Ramsey, all of Seattle, Wash., for plaintiff in error.

Harold Preston, Bogle, Graves, Merritt & Bogle, and O. B. Thorgrimson, all of Seattle, Wash., for defendant in error.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge. This brings into the record the sole question of the sufficiency of the testimony to justify the sending of the case to the jury.

The first question presented is whether it was essential that notice should have been given to the defendant by the Commercial Bank of Scotland of the bank's acceptance of the guaranty; no such notice having been proven. This we will waive, as we deem the testimony insufficient to show that the plaintiff is the owner of the demand of the bank against Frank Waterhouse, Limited, or any part of it, together with the guaranty of the defendant, or is in a position to enforce the guaranty. The testimony having any relation whatever to the subject is brief, and may be noted shortly.

John Gill, the plaintiff's testator, at the request of Alexander Mc-Nab, one of the persons who executed and delivered to the bank guaranties like that of the defendant, and at the same time paid to the bank, on February 15, 1907, the amount guaranteed. At that time no assignment was made by the bank to Gill, either of its demand against Frank Waterhouse, Limited, or of the guaranty, nor does it appear what agreement was made between the bank and Gill respecting the transaction of payment of the bank's demand by Gill. James Gill, a grandnephew of John Gill, produced what he termed an assignment of the letter of guaranty by the bank to John Gill, which bears date October 8, 1907, and includes as well the claim of the bank against Frank Waterhouse under the guaranty. On cross-examination the witness says:

"I have no direct personal knowledge of the initiation of the transaction between the late John Gill and the Commercial Bank of Scotland, Limited, but my understanding is that the bank were desirous that the debt due by Frank Waterhouse, Limited, should be repaid, and that Mr. Alexander McNab, who was one of the guarantors and who was not, I understand, in a position to meet the guaranty if it were enforced against him, approached the late John Gill as a friend, and asked him to take over the debt; that the late John Gill agreed to do so, and paid off the debt, which amounted to £22,897. 16. 5, and obtained the assignation before mentioned by the Commercial Bank of Scotland, Limited, in favor of himself as an individual, in consideration of said payment by him to the bank, and that the payment was made by check or checks by the late John Gill. I have not been able to find the check or checks among the late John Gill's papers."

Later the witness says:

"I have found among the trust papers certain documents relating to the assignation by the bank and to the present suit, but these did not contain any record of any transaction with Mr. McNab in relation thereto. * * * I have no knowledge of any agreement, written or verbal, between the late John Gill and Alexander McNab or any other person of the nature referred to in this interrogatory," namely (quoting from the interrogatory), "whereby said McNab was entitled to or obligated to repay to John Gill any moneys advanced or paid by John Gill to the Commercial Bank of Scotland, Limited, on this transaction, or under which Alexander McNab was or is entitled to share in the proceeds of this suit, or of any collection made from said letter of guaranty of said Frank Waterhouse, defendant, or to repay to or indemnify John Gill against any losses he might sustain by reason of any moneys he paid or advanced to the Commercial Bank of Scotland, Limited, on said letter of guaranty, or in the purchase thereof?"

James Lawson Anderson, secretary of the Commercial Bank of Scotland, Limited, testifies:

"The amount due to the bank by Frank Waterhouse, Limited, on the said accounts was paid to the bank by John Gill, solicitor Supreme Courts, Edinburgh, and the bank granted an assignation in his favor of the amount so paid and of the guaranty by Frank Waterhouse in favor of the bank. The assignation was granted on 8th October, 1907. * * * The bank also held letters of guaranty by Alexander McNab, John McNab, R. B. Archibald, Marshall McEwen & Co., and the partners thereof, and John M. Mitchell. These guaranties have not been assigned or transferred by this bank, but on payment being made by John Gill they were sent to him. John McNab is dead. * * * The payment of £22,897. 16. 5 was made to the bank by the said John Gill in exchange for the assignation in his favor. The payment was made by a check of his own, I understand. · I have not the particulars of the check. * * * I did not participate in the negotiations leading up to the execution of the assignation to the said John Gill, and have no knowledge of any understanding, agreement, or contract, written or verbal, between the defendant, John Gill, and Alexander McNab, or between John Gill and Alexander McNab. There was no understanding, agreement, or contract, written or verbal, in regard to this matter between the bank and Alexander McNab. * * * I do not know what interest John Gill had in paying up the advance and taking an assignation of the said guaranty. He did not ask for an assignation of the other guaranties, so far as I am aware."

William McEwen testifies:

"Subsequently I wrote to the Commercial Bank of Scotland. Limited, intimating my appointment and asking them to send me a certified statement of their claims in the liquidation. They informed me that the company's indebtedness to them has been settled by Mr. John Gill, S. S. C., Edinburgh, and that they had assigned their claim to him. Mr. Gill subsequently rendered his claim to me as liquidator of the company (Frank Waterhouse, Limited), and I admitted the claim. I have paid to the said John Gill, and after his death to his executors, dividends in respect of Mr. Gill's claim in the liquidation. The sums which I have paid to him and them to date amount to £2924. 17. 4."

William Bamford Lang, an assistant agent in the Commercial Bank of Scotland, Limited, testifies:

"I had no negotiation with any party regarding the assignation of the claim by the bank. This was all arranged by the head office in Edinburgh, and at the time I was in the London office. The advances were repaid by the late Mr. John Gill, S. S. C., Edinburgh."

The foregoing excerpts from the testimony contain all there is in the record which has any material bearing upon the transaction between Gill and the bank in making payment of the Frank Waterhouse, Limited, indebtedness. It may be stated further, however, that the record does show that Alexander McNab, Frank Waterhouse, and John M. Mitchell were original shareholders in Frank Waterhouse, Limited, and that John Marshall, John McNab, and Bruce Archibald became shareholders on March 31, 1898. It further appears that on October 6, 1900, Frank Waterhouse and Frank Waterhouse, Limited, entered into an agreement whereby Waterhouse agreed to form an American company, and that said company should purchase the assets of Frank Waterhouse, Limited, subject to charges affecting the same, and should pay therefor $230,000, and, in addition to the price to be paid, that the American company should assume and pay all the indebtedness of Frank Water-

house, Limited, in the state of Washington, the said Frank Waterhouse, Limited, agreeing to discharge all of its London indebtedness with the purchase money, except to Trinder, Anderson & Co., London. The articles of incorporation of Frank Waterhouse & Co. are also in evidence, showing a compliance, to that extent at least, by Waterhouse with his agreement.

The primary debt was the obligation of Frank Waterhouse, Limited, to the bank. Waterhouse's guaranty stood as a surety for that debt in the amount named in the guaranty. When John Gill paid the money at the bank, he paid the indebtedness of Frank Waterhouse, Limited. This, the evidence indicates, he did at the request of Alexander McNab. McNab was held to the bank under a like guaranty as Frank Waterhouse. This implies an agreement on the part of McNab to repay Gill. But what of any agreement between Gill and the bank? The assignation, it is true, shows a very specific agreement; but that paper was executed nearly eight months after the transaction of payment took place. James Gill relates that Alexander McNab approached Gill and asked him "to take over the debt," and that Gill "agreed to do so." The witness, however, frankly stated in the beginning that he had no personal knowledge of the initiation of the transaction between Gill and the bank. Further than this, he does not give the source of his understanding, who told him, nor how he came by it. So that his testimony on the subject stands as the sheerest kind of hearsay. Anderson, the secretary of the bank, says: "The payment of £22,897. 16. 5 was made to the bank by the said John Gill in exchange for the assignation in his favor." He says further, however, that he did not participate in the negotiations leading up to the execution of the assignation to Gill. It is quite apparent that what he said about the "exchange for the assignation" was from the paper itself, and not from any personal knowledge of the initial or subsequent transaction in paying the money or taking the assignation. So his testimony is worthy of no greater weight than that of James Gill. What the witnesses say, therefore, proves nothing as to any agreement entered into by Gill with the bank at the time of payment.

We might assume that an inference is deducible that the assignation correctly recites the agreement as actually entered into at the time of payment from the fact that it was subsequently executed and delivered, but the counter inferences are so strong as to repel that assumption. Gill was himself a solicitor of long standing, and must have understood well the legal effect of what he did. The bank was undoubtedly well versed respecting banking methods and the legal formalities necessary for transferring title to a claim or demand. Furthermore, the request of McNab shows that what Gill did was for his accommodation. The bank made no assignment to Gill of McNab's guaranty; nor did it of the guaranty of any of the other persons who stood in the same relation to the bank, as it respects the Waterhouse, Limited, account, as did Frank Waterhouse. It is scarcely probable that a person of Gill's learning, sagacity, and experience in legal affairs would have purchased a demand of the kind of the bank, without taking with it all the securities for its payment that the bank held.

This he would have done at once when the money was paid. Furthermore, no agent or employé of the bank has been called to testify concerning the initial agreement; nor have the persons who executed the assignation for the bank, nor the witnesses thereto. Beyond even this, the agreement between Frank Waterhouse and Frank Waterhouse, Limited, in which company McNab was interested as a stockholder, has some bearing. By that agreement, the London indebtedness was to be taken care of, to the relief of the defendant. McNab was undoubtedly cognizant of this, and hence the direct inducement on his part to request Gill to pay the Frank Waterhouse, Limited, demand at the bank.

[1-3] In the light of all the circumstances and conditions attending the transactions, there can scarcely remain two opinions relative to whether Gill purchased the account of Frank Waterhouse, Limited, or so much of it as the Frank Waterhouse guaranty would pay, from the bank, or simply made payment to that amount upon the account. The most natural thing for men of business affairs to have done, if it were a purchase of the account, was to take an assignment of it at once, together with all the guaranties, and if it were not a purchase, simply to do as they did, pay the money, and let it be applied on the account, as was done. When, therefore, the money was paid, the account was satisfied to the extent of the payment, and a subsequent assignment by the bank could not revive it; and, of course, the account being satisfied, the guaranty was satisfied also, and Gill has his recourse only against McNab, at whose request he made the payment. The conclusion thus reached is borne out by the following analogous cases: Lee v. Field, 9 N. M. 435, 54 Pac. 873; Penwell v. Flickinger, 46 Mont. 526, 129 Pac. 323; Moran v. Abbey, 63 Cal. 56; Day v. Humphrey et al., 79 Ill. 452.

[4] But it is urged that the court should have submitted the case to the jury. If the court is satisfied, conceding all the inferences which the jury can justifiably draw from the testimony, that the evidence is insufficient to warrant a verdict, it is the duty of the court to withhold the case from them. Sloss Iron & Steel Co. v. South Carolina & G. R. Co., 85 Fed. 133, 29 C. C. A. 50.

The proposition has been stated in another way: That where the evidence as to material facts is contradictory, or where the facts are admitted or undisputed and are such that reasonable men can fairly draw opposite conclusions from them, the question is for the jury; but where there is no dispute about the facts, and they are such that but one conclusion can be fairly drawn from them by reasonable men, then the question is not for the jury. Northwestern Fuel Co. v. Danielson, 57 Fed. 915, 6 C. C. A. 636.

But the most common way of stating the proposition is that adopted by the Court of Appeals in this circuit, namely, that "the trial court may direct a verdict in any case where the evidence is of such conclusive character that the court, in the exercise of a sound judicial discretion, would be compelled to set aside a verdict returned in opposition to it." Shoup v. Marks, 128 Fed. 32, 62 C. C. A. 540. See, also, Pat-

ton v. Texas & Pacific Railway Co., 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361.

We think that, applying the rule under either statement, the trial court properly refused to submit the cause to the jury, and was right in directing a dismissal.

Exception was taken to the allowance of objections to the introduction of certain testimony on the ground that it was hearsay. This testimony is in line with certain of that upon which we have commented. In the view we have taken, it can have no practical effect whether the testimony objected to is in or out. The result must be the same in either event. It only emphasizes the state of mind of the trial court upon the subject, in which we concur. If it be conceded that there was error in rejecting the testimony, it was, in the light of the record, harmless.

Another assignment of error relates to the introduction of the agreement between Frank Waterhouse and Frank Waterhouse, Limited, touching the formation of the American company. This document was attached to cross-interrogatory No. 5 propounded to the witness McEwen, and was marked as an exhibit thereto, and went in as such. Although objection was made to the introduction of the paper, there was no ruling by the court, and no exceptions were saved.

The next assignments of error insisted upon relate to the rejection of a copy of the accounts between Frank Waterhouse, Limited, and the bank. Again, under the view which we have taken of the case, these accounts are rendered wholly immaterial; and, if error was committed in rejecting them, it was harmless.

Judgment affirmed.