Argued January 18, affirmed February 13, rehearing denied March 19, 1929.

## CITY OF MARSHFIELD EX REL. McGEORGE GRAVEL CO. *v.* UNITED STATES FIDELITY & GUARANTY CO. ET AL.

(274 Pac. 503.)

For appellant there was a brief over the name of *Messrs. Goss & Murphy* with an oral argument by *Mr. H. S. Murphy.*

For respondent there was a brief and oral argument by *Mr. Arthur K. Peck.*

BELT, J.—This is an action upon a bond. The defendant Payne entered into a contract with the City of Marshfield to pave a certain part of Highland Avenue. A bond was executed by the contractor, with the defendant company as surety thereon, conditioned that there would be a faithful performance of the contract and that payment would be made for all labor and material claims. The contractor became bankrupt and was unable to pay the claim of the

McGeorge Gravel Company which had sold and delivered to him certain material. It is admitted in the pleadings that the material furnished by plaintiff and used by the contractor in the performance of this contract was of the agreed value of $6,807.90. Plaintiff alleges that no part of this sum has been paid except $5,961.83, leaving a balance due of $846.07. The defendant company alleges payment of $6,571.70 or a balance due of $236.26. It, however, as a matter of compromise, tendered judgment in favor of the plaintiff for $336.20. The cause was submitted to the court without a jury and judgment was rendered in favor of plaintiff for the amount demanded in the complaint, together with attorney fee of $125. The surety company appeals.

1, 2. The sole issue in the case is the question of payment. The surety company contends that it appears without contradiction that the McGeorge Gravel Company credited the contractor with payments aggregating $6,571.70, and that there cannot be any change made in the application of these payments to its prejudice. In support of this theory our attention is directed to an affidavit of the McGeorge Gravel Company made two days after the contractor was adjudged a bankrupt, wherein an itemized statement of account was set forth showing total debits of $7,417.77 and credits amounting to $6,571.70. A written notice was also given by the McGeorge Gravel Company to the City, disclosing an identical statement of debits and credits. The surety company asserts that, when the plaintiff determined to commence action it evidently was decided that it would be impossible to prove that materials of the value of $7,417.70 were actually used by the contractor in this

construction work and, therefore, made a deduction of $609.87 from the debits and credits as originally claimed. It will be observed that $609.87 represents the difference between payments as claimed by plaintiff and the surety company.

To refute this charge of changing application of payments, the plaintiff offered testimony tending to show that material was furnished to the contractor of the value of $609.87 which was used in the construction of driveways and sidewalks for abutting property owners, wholly unconnected with the street improvement contract. Mr. McGeorge of the McGeorge Gravel Company, testifying about the ''Highland Avenue account,'' stated in substance that it included material furnished for private work as well as that used in the street construction project. We conclude that whether the creditor had made an application of payments as alleged by the surety company was a question of fact for the court to determine. Its finding in reference thereto is equivalent to the verdict of a jury. Appellant's legal position that a creditor cannot make a change in application of credits to the prejudice of a surety is sound: 21 R. C. L. 93; 30 Cyc. 1252, but we cannot say, as a matter of law, that such was done. What the creditor did, if its testimony is to be believed, was to appropriate payments aggregating $609.87 to an unsecured debt. Did it have the right so to do?

3, 4. Having reached the conclusion that there was no change in application of payments, we next consider the question: Did the surety have such an equitable interest in the specific proceeds of this contract upon which it was secondarily liable that it could control the application of the payments? In the in-

stant case there was no direction by the debtor as to how payments should be credited. If the alleged equitable interests of the surety are not controlling, it would follow that the creditor would have the right of election as to the application of payments. It is well established that any payments made by the contractor from funds not derived from the contract cannot be disturbed by the surety. In such case the creditor has the right of election as to whether the payment will be applied upon a secured or an unsecured account. If it be assumed, however, that, in fact, the payments were the fruits of the contract, then a different question is presented,—one upon which there is much conflict among the authorities. There is one line of authority, of which *Sturtevant Co.* v. *Fidelity & Deposit Co. of Maryland,* 92 Wash. 52 (158 Pac. 740, L. R. A. 1917C, 630), is a leading case, in which it is held that a creditor may make such application of credits as it sees fit if it acts in good faith and has no knowledge of the source of the fund from which payments are made. As a matter of fair dealing between the contractor and the surety, the former should direct the creditor to apply proceeds which he has received under the contract to the beneficial interest of the surety. Under this line of authority, if the creditor knows of the source of the funds he must apply the payment to the indebtedness incurred in the performance of the contract. See cases in notes to 21 A. L. R. 704; 49 A. L. R. 952; Ann. Cas. 1917C, 582 and L. R. A. 1917C, 637. A second line of authority holds that it is immaterial as to the knowledge of the creditor relative to the source of the fund from which payments are made and that where the surety has an equitable interest in the

specific funds which are the proceeds of the contract, the creditor must apply the payments for the protection of the surety; 21 R. C. L. 111; Page on the Law of Contracts, § 2845; *Columbia Digger Co.* v. *Rector*, 215 Fed. 618.

There are other cases which hold that a surety has no control over the application of payments where the money paid is not held in trust and that the knowledge of the creditor as to the derivation of the funds is immaterial. These authorities are to the effect that the rule as between creditor and debtor obtains and is not affected by the equitable interest of the surety. The leading case in support of this holding is *People* v. *Powers,* 108 Mich. 339 (66 N. W. 215). In Williston on Contracts, Section 1806, it is said:

"It seems impossible to deny that the usual rules governing the application of payments should control the application of any payment, if the debtor who makes the payment did not hold it subject to a trust. Thus a contractor who received a payment from one interested in a particular application being made might have bought an automobile with the money, and the seller of the machine knowing all the facts could not have been subjected to any claim. Even a donee of the money could keep it, unless the donor were so nearly insolvent at the time of the gift that a gift of any of his property would be fraudulent against creditors. If this is true, a creditor of the contractor may surely take the money in satisfaction of any valid debt, even though he knows the source from which the money is derived. This may put him on inquiry whether there is a trust and, even if there is no trust, may sometimes have evidentiary value as indicating the debtor's intention; but if it be granted that no intention is manifested by the debtor, and that there is in fact no trust, the creditor should be allowed to apply the payments to any debt. Good authority supports this conclusion."

The rule announced in *People* v. *Powers, supra,* is, in our opinion, consonant with equity and good sense. The paid surety assumes the risk that the contractor will not keep good faith in making payments upon accounts for which it is secondarily liable. The bond specifies that the contractor will pay all labor and material claims and in the event of his failure so to do the surety company will respond. It is not stipulated therein that payments will be made from any particular fund. The surety is in a position to see to it that the contractor makes proper direction as to application of payments. The materialman relies upon the bond.

As was said in the well-considered case of *Salt Lake City* v. *O'Connor* (Utah), 249 Pac. 810, 49 A. L. R. 941:

"In the public interest commercial transactions should not be fettered. The necessary complications of modern business should not be increased by avoidable additions. Money released into trade should be permitted to circulate freely, unburdened by hidden equities or liens. In transactions like the one under consideration, the surety has ample facilities for protecting itself. It may with propriety reserve and exercise a surveillance over the disbursement of the proceeds of contracts for the performance of which it is surety. Materialmen dealing with contractors cannot do so. They cannot, consistent with business proprieties, inquire into the sources of money paid them. When a surety, as in the case at bar, permits money on the contract to be paid the contractor unconditionally, which it must know he may use for general purposes, we see no sufficient reason for sustaining any claim or equity in behalf of the surety, in such money, after it has been paid to another in the due course of business. The risk of such a loss is one of the hazards which the surety, for a fixed consideration, assumes by its contract."

While the rule last stated is not in keeping with the numerical weight of authority, we believe it is based upon logic and good reason and is recognized by the trend of recent decisions.

In the instant case there is no evidence that the McGeorge Gravel Company knew anything about the source of the fund from which the payments were made or that it was acting otherwise than in good faith. It elected to apply payments to an unsecured indebtedness, and we think it had the legal right so to do.

The judgment of the lower court is affirmed.

REHEARING DENIED.

COSHOW, C. J., and BEAN and BROWN, JJ., concur.