No. 12,053.

ARMOUR AND COMPANY OF DELAWARE ET AL *v.* McPHEE
AND McGINNITY COMPANY ET AL.

(285 Pac. 942)

Decided February 17, 1930.   Rehearing denied March 10, 1930.

Messrs. YEAMAN, GOVE & HUFFMAN, Mr. SHERMAN A.
SUTLIFF, Mr. LUKE J. KAVANAUGH, for plaintiffs in error.

Messrs. BARTELS & BLOOD, Mr. JAMES A. WOODS, Messrs.
MELVILLE, MELVILLE & TEMPLE, Messrs. GABRIEL, MILLS &

Mills, Miss Mary F. Lathrop, Mr. William H. Wadley, Messrs. Robinson & Robinson, for defendants in error.

*En Banc.*

Mr. Justice Campbell delivered the opinion of the court.

While the writ of error to a decree in a mechanics' lien suit was in process of review by this court and undetermined in the case entitled *Armour & Company v. M. & M. Co.*, 85 Colo. 262, 275 Pac. 12, the trial court caused to be filed in this court a statement in writing which led it to ask that the cause, in so far as it affected the claim of H. W. Vosmer, one of the parties to the suit and whose lien had been established, be remitted to the trial court for further investigation because of a showing that had been made with it indicating misconduct on the part of Vosmer, which caused the improper judgment in his favor to be rendered. Thereupon we proceeded to a consideration of the case as to all of the claimants, except Vosmer, and affirmed the decree of the court in their favor, and remanded the case, as requested, so far as it affected Vosmer, to the trial court for further hearing. The trial court was authorized by our order to take further evidence, after due notice to Vosmer and full opportunity was given him to be heard, and it was found necessary to do so, as the result of the investigation, to amend the judgment on the claim of Vosmer. When the case as to Vosmer reached the trial court, at the suggestion of Vosmer's counsel, the district court directed counsel for Armour & Company to prepare a statement defining the issues which were to be determined. This statement was prepared and the issues were defined as: (1) That the defendant Vosmer testified falsely at the trial of the cause when he swore that he had never received any moneys on account of the so-called Armour & Company hog cooler and hog conveyor job; (2) that Vosmer

failed to produce at the first trial in the district court books of account as required by the subpoena duces tecum issued October 3, 1927, while the case was first pending in the district court. Both parties produced testimony upon these two issues, both oral and record evidence, and at the close of the hearing upon motion of counsel for Armour & Company, the trial court set aside its former judgment against this corporation and entered judgment in its favor, and upon the finding that Vosmer was guilty of contempt of court on account of his failure to produce at the first trial the books of account that were required by the subpoena duces tecum which was served upon him, adjudged him guilty of contempt of court and ordered him confined in the county jail for a period of 30 days. Motion for new trial was overruled and the trial court ordered the entire proceedings certified to the Supreme Court for its action, which are now before us for determination.

Although there are a number of specifications in the assignments of error, there are really only two principal questions involved which may thus be stated: (1) Did Vosmer fail to comply with the subpoena duces tecum? (2) Did the court err in vacating the judgment which had been rendered in favor of Vosmer at the time of the first trial, and in entering judgment in favor of Armour & Company dismissing Vosmer's claim of lien?

1. There is scarcely room for argument as to the first proposition. The court found upon testimony, which is not in serious conflict, that Vosmer did not produce at the former trial all the books that were called for by the subpoena. We think the clear weight of the testimony is to the effect that he produced only one book called a "day book" which was not a book of original entry so far as concerns applications of credits, although it is possible that he produced another book, but it threw no light upon the controversy. The omission by Vosmer to produce at the first trial a book called a "charge accounts journal," which was before the trial court on the second

trial, was intentional, and it is more than apparent that it was not introduced because on its face it disclosed by entries therein made by Vosmer himself that the Armour & Company job had been paid for. This book was before the trial court on the second trial and it showed these entries by Vosmer, and that they had been erased, or lines drawn through them, after the death of Sullivan, the principal contractor, who made the payments. These books also disclosed that these payments, thus applied by Vosmer in his own books, had afterwards been credited therein to another account or job for which Vosmer did work and furnished materials, the same being a job at Topeka, Kansas, for the Union Pacific Railroad Company, Vosmer being engaged at the same time upon these two jobs.

The court found from the evidence that apparently it was the intention of Vosmer, after the application to the Armour job, which he himself had made in his books of the payment which the principal contractor Sullivan made to him, and thereafter applying this payment to the Topeka job, was to avoid more confusing litigation in Kansas which he would probably have been required to engage in, than that which he would be required to wage against Armour & Company in Colorado. The evidence showed, and the trial court found, that when Vosmer filed his lien statement against Armour & Company his own books showed, not only that he had been paid this amount on his claim, but also that he intentionally and wilfully filed it for an amount more than was due according to his own books. Under the provision of section 6464, Compiled Laws of 1921, such conduct deprived him of any lien at all against Armour & Company.

There is some discussion by counsel for Vosmer in his briefs and at the oral argument that it was error on the part of the trial court to hear testimony, because there was no indication, in its statement of the issues, whether the alleged contempt was criminal or civil. There seems to have been no objection on the part of

Vosmer's counsel to the statement of the issues by the trial court, and no objection appears in the record to the procedure followed. Having acquiesced in such statement and procedure below, it is too late for counsel to urge such objections here. The evidence preponderates in support of the court's finding, that Vosmer evidently intended to conceal from the trial court the state of the account between him and Armour & Company and intentionally withheld and failed to disclose or produce his books which showed that he himself had given credit in them to Sullivan for the full amount of his indebtedness to him on the Armour & Company job.

2. Was the trial court justified in vacating the judgment which had been entered in favor of Vosmer at the first trial in 1927? This involves a determination of the question whether or not the payment which Sullivan, the principal contractor, made to Vosmer of $1,360, was appropriated by him to the Armour & Company account. Vosmer entered in his books the credit of this sum to the particular account of Sullivan. It is true that there is no direct evidence that he informed Sullivan that he had done so. Likewise there is an absence of testimony that such information was not given. Sullivan died after this entry in his favor was made and his testimony was not procurable. Vosmer claims that the mere entry of credit on a particular account by the creditor is not an appropriation in the absence of notice to the debtor. This was the English rule but it is not universally recognized in this country. A number of cases are cited from New York and other jurisdictions which indicate that the rule in this country generally does not go to the full extent of following the English doctrine. Vosmer himself testifies that he received payment from Sullivan aggregating $1,360 and that he applied it on the Armour job, and he said that he thought he should be getting money on this job and, therefore, gave credit accordingly. In 30 Cyc. p. 1239, the statement is made that after a creditor has made an application of a payment, it cannot be altered

except by mutual consent. A leading case is *Pearce v. Walker,* 103 Ala. 250, 15 So. 568. In 21 R. C. L. p. 93, sec. 97, the author says: ''While a creditor is not obliged to make an appropriation immediately the payment is made, still where he does appropriate the payment in a particular way, he is bound by his act and cannot afterwards change the application without the consent of the debtor.'' In this case Sullivan was dead at the time Vosmer attempted to change the application of credits. After this application of credit was made by Vosmer to the Armour job, the rights of Armour & Company had intervened, and a controversy arose as to payments on this job, and the credits could not be changed without its consent.

▪ In the case of *The Sophia Johnson,* 237 Fed. 406, it was held, among other things, that while a creditor has the right to apply a general payment made, to any account which it may have against the debtor, when no application is made by the debtor himself, yet this must be done at the time and before any controversy arises. It is too late to make application of payments while preparing for suit, or after the suit is instituted. We think this doctrine applies in this case. See, also, *Terhune v. Colton,* 12 N. J. Eq. 232; *Pearce v. Walker, supra; Pinney v. French,* 67 Kansas, 473, 73 Pac. 94.

We think the judgment of the trial court, both as to Vosmer's contempt and in setting aside Vosmer's judgment against Armour & Company, was right and it is accordingly affirmed.

MR. JUSTICE MOORE having tried the case below, does not participate in the decision.