Richard S. STEPHENSON, W. Ralph Foster, Robert T. Diggins, State Manor, Inc., Lee A. Wilson and Vera H. Wilson, Title Insurance and Trust Company of Alaska, Trustee for the Benefit of National Bank of Alaska, Federal National Mortgage Association, Bowery Savings Bank, and National Bank of Alaska, Appellants,

v.

KETCHIKAN SPRUCE MILLS, INC., Appellee.

No. 586.

Supreme Court of Alaska.

March 24, 1966.

Neil S. Mackay, Anchorage, for appellants.

J. L. McCarrey, Jr., Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

---

DIMOND, Justice.

Appellee sold building materials to a corporation, Evergreen, Inc. Evergreen used the materials to prefabricate portions of a house, and then sold the materials as a "house package" to a contractor who constructed a house for appellant, State Manor, Inc., on lot 4 of the State Manor Subdivision.

Appellee was not paid for the materials it sold. It gave notice of a claim of a materialmen's lien on lot 4, and subsequently brought this action to foreclose the lien. A judgment of foreclosure of the lien was entered, and appellants brought this appeal. The principal question for our decision is whether appellee's lien had been discharged by payment of the debt for which the lien was claimed.

Evergreen had several accounts with appellee. The sum of $3,239.71, referred to as the State Manor account, was owed for materials purchased by Evergreen which found their way into the house constructed on lot 4 of the State Manor Subdivision. Appellee's claim of lien on lot 4 was recorded on March 5, 1962. On June 27, 1962 William Campbell, the business manager of Evergreen, paid appellee the sum of $11,-244.44. At Campbell's request appellee applied $3,239.71 of this amount in full payment of the State Manor account. On July 6, 1962 Campbell notified appellee that the directors of Evergreen had not approved payment of the State Manor account. He requested appellee to void the June 27 credit and apply the $3,239.71 to the open book accounts of Evergreen, which appellee did.

Evergreen had the right, with the manifested assent of appellee, to change application of the $3,239.71 payment from the State Manor account to Evergreen's open book accounts with appellee,[1] provided that the rights of third parties would not be jeopardized or injuriously affected.[2] No

---

[1] Restatement, Contracts § 392 (1932).

[2] Hart, Schaffner & Marx v. Vaugh, 17 Cal.App.2d 516, 62 P.2d 377, 378 (Dist. Ct.App.1936); Johnston v. Groom, 99 Cal. App. 462, 278 P. 935, 936 (Dist.Ct.App. 1929); Pinney v. French, 67 Kan. 473, 73 P. 94 (1903); See Annot., 57 A.L.R. 2d 855, 865 (1958), supplementing 21 A.L.R. 704, 712 (1922).

such third party rights are involved here. The money used by Evergreen to pay appellee did not come from the corporate appellant, State Manor, Inc., nor from the individual appellants, Stephenson, Foster and Diggins, but rather from other of Evergreen's accounts receivable having nothing to do with the State Manor Subdivision. There is no showing that after Evergreen's payment was applied to the State Manor account that the appellants did anything in reliance on such payments so that it would be unjust to permit Evergreen and appellee to agree to the reapplication of the payment to other accounts. Since the reapplication of such payment was made by the mutual consent of Evergreen and appellee, and appellants' rights were not jeopardized or injuriously affected, neither the State Manor debt nor the lien on lot 4 was discharged by Evergreen's initial direction to apply its payment to the State Manor account.

We agree with the principles of law, referred to by Justice Rabinowitz in his dissenting opinion, which pertain to the discharge of a secured obligation and of a surety by the initial allocation of a payment of a debt, notwithstanding a subsequent reallocation of such payment. We simply believe that such legal principles should not be applied in this situation where to do so would give the State Manor Corporation a windfall to which it is not entitled. It would be unjust, we believe, to relieve that corporation of its lien obligation to pay the State Manor account where the corporation was the ultimate user and owner of the materials represented by such account and had paid nothing for such materials.

■ Nor was the State Manor debt discharged by an accord and satisfaction, as appellants claim. An accord is a contract between a creditor and a debtor for the settlement of the creditor's claim by some performance other than that which is due.[3] No such contract existed between appellee and appellants, or between appellee and Evergreen. The performance that was due

was payment of the State Manor account. It was not agreed that there would be any substituted performance for such payment.

Appellants contend that the appellee's lien was invalid because the claim of lien was not verified in accordance with AS 34.35.070 (c) (5) which requires that a lien claim "be verified by the oath of the claimant or another person having knowledge of the facts."

Appellee's lien claim was executed as follows: .

KETCHIKAN SPRUCE MILLS, INC.
By: /S/ Lyle E. Anderson
 LYLE E. ANDERSON, Manager

Immediately below Anderson's signature was the following:

UNITED STATES
 OF AMERICA } ss:
STATE OF ALASKA

> LYLE E. ANDERSON, being first duly sworn, upon oath deposes and says:

That he is the Manager of KETCHIKAN SPRUCE MILLS, INC. and makes this verification for and on behalf of said corporation; that KETCHIKAN SPRUCE MILLS, INC. is the claimant named in the foregoing claim of lien; that he has read the same and knows the contents thereof, and that the same is true of his own knowledge.

---

SUBSCRIBED and SWORN to before me this 5th day of March, 1962.
 /S/ Veryl B. Lekander
 Notary Public in and
 for Alaska
 My Commission expires:
 9/28/64

It is the lack of Anderson's signature on the line following the form of oath that appellants contend invalidates the lien.

■ AS 34.35.500 provides that the intent of the lien statutes "is remedial and

---

3. Restatement, Contracts § 417, comment a (1932).

\* \* \* [should] be liberally construed."[4] Substantial compliance with the verification requirement is sufficient.[5] There is substantial compliance here. The form of oath followed by the words "subscribed and sworn to before me \* \* \*", and the notary public's signature, amounts in substance to a certificate by the notary that the claim of lien was verified by the oath of Anderson. The claim of lien is not ineffective by reason of any insufficiency in the requirement for verification.

In order to perfect its lien, appellee was required by statute to file its claim of lien within 90 days after it ceased to furnish materials for the building on lot 4 of the State Manor Subdivision.[6] Appellants contend that the claim of lien was not filed until after the 90 day period had expired and, therefore, that the lien was lost.

 The lien claim was filed of record on March 5, 1962. The trial court found that appellee had furnished materials for the building on lot 4 as late as December 6, 1961, which was within 90 days of the date the lien claim was filed. We cannot say that such a finding is clearly erroneous, which we would have to do in order to set the finding aside.[7] The evidence supports the court's finding. Materials furnished on December 6 consisted of some hand rail brackets costing $1.50 and aluminum storm doors and weather stripped thresholds costing $39.35. The fact that the cost of those items is small in comparison with the over-all cost of the building does not defeat appellee's lien where it appears, as it does here, that the furnishing of the materials on December 6 was done in good faith and in the normal course of business, and not for the purpose of extending the time to file a claim of lien.[8]

Appellants' final point is that the court erred in holding the appellants, Stephenson, Foster and Diggins, individually liable for payment of the State Manor account. Those individual appellants and the corporate appellant, State Manor, Inc., pursuant to statute, had posted lot 4 with the notice of non-responsibility for liens.[9] Appellee refused to furnish materials for the house to be constructed on lot 4 unless the appellants agreed to waive their notice of non-responsibility. The appellants and appellee then executed plaintiff's exhibit 2, a document entitled "Waiver of Notice of Non-lien Liability". In addition to waiving their rights under law pursuant to the notice of non-responsibility for liens, the appellants in this instrument agreed that they would pay for the building materials to be purchased from appellee, and in the event of

4. Clay v. Sandal, 369 P.2d 890, 896 (Alaska 1962).

5. Lyons v. Howard, 16 N.M. 327, 117 Pac. 842 (1911); Ainslie v. Kohn, 16 Or. 363, 19 P. 97, 103 (1888).
 AS 34.35.020, relating to the foreclosure of liens, provides in part as follows:
 (a) No mistake in formality or lack of statement in the lien notice or the pleadings is ground for dismissal or unnecessary delay in an action to foreclose a lien.
 (b) Substantial compliance with the law relating to the contents of the lien notice is considered sufficient, if the notice satisfactorily shows the name of the claimant, the amount of his demand, the time of his employment, the property sought to be charged with the lien sufficient for identification and the name of the owner or reputed owner of the property.

6. AS 34.35.070(b).

7. Civ.R. 52(a) provides in part that "[f]indings of fact shall not be set aside unless clearly erroneous \* \* \*."
 Gilbert v. Sexton, 401 P.2d 300, 301–302 (Alaska 1965); Herning v. Wigger, 398 P.2d 1002, 1005 (Alaska 1965); Williams v. DeLay, 395 P.2d 839, 845 (Alaska 1964); First Nat'l Bank of Fairbanks v. Dual, 392 P.2d 463, 465 (Alaska 1964); Isaacs v. Hickey, 391 P.2d 449, 451 (Alaska 1964); George v. Willman, 379 P.2d 103, 106 (Alaska 1962); Nordin v. Zimmer, 373 P.2d 738, 741–42 (Alaska 1962); Rogge v. Weaver, 368 P.2d 810, 813 (Alaska 1962).

8. Walsh-Anderson Co. v. Keller, 139 Mont. 210, 362 P.2d 533, 537 (1961); Christenson v. Behrens, 231 Or. 458, 372 P.2d 494, 498–499 (1962); Kirk v. Rohan, 29 Wash.2d 432, 187 P.2d 607, 609 (1947); Flint v. Bronson, 197 Wash. 686, 86 P.2d 218, 220 (1939).

9. AS 34.35.065.

non-payment, agreed that appellee would have the right to file a lien on lot 4. This instrument was signed on behalf of State Manor, Inc., and also individually by the appellants, Stephenson, Foster and Diggins. On the basis of this document, the court concluded that the individual appellants, in addition to State Manor, Inc., were liable for the payment of the State Manor account.

The testimony of appellee's manager, Lyle Anderson, indicated that plaintiff's exhibit 2 did not reflect the actual intent of the parties, the intent of appellee having been not to hold the individual appellants personally responsible for the debt. When appellants' counsel attempted to go into the question of intent during the examination of the appellant, Diggins, the court sustained an objection by appellee's counsel to such testimony on the ground that plaintiff's exhibit 2 spoke for itself, and that since the document was unambiguous, parole evidence as to the understanding of the parties was inadmissible.

We believe the court was mistaken. The testimony of Anderson raised a question as to whether plaintiff's exhibit 2, in providing for the individual responsibility of the appellants, Stephenson, Foster and Diggins, varied from the actual understanding of the parties but was nevertheless signed by appellee and appellant in ignorance of the variance. In such a situation the court ought to have allowed the admission of parole evidence to show mutual mistake, if it existed, and what the real intent of the parties was.[10] If after having heard such evidence, the court should find the proof clear and convincing[11] that there was a variance between the true agreement and its written expression, the court should reform the writing to express the actual intention of the parties.[12]

To the extent that the judgment below imposes personal liability on the appellants, Stephenson, Foster and Diggins, it is set aside and the case remanded for further proceedings consistent with the views expressed in this opinion. In all other respects the judgment is affirmed.

RABINOWITZ, Justice (dissenting).

On June 27, 1962, William Campbell, acting in behalf of Evergreen, Inc., paid to appellee Ketchikan Spruce Mills, Inc. the sum of $11,244.44 and at the time of making this payment, Campbell designated that $3,239.71 of that sum be applied to the State Manor account. The then total existing indebtedness of Evergreen to appellee Ketchikan Spruce Mills, in regard to the State Manor account, was $3,239.71. In light of these circumstances, and what I conceive to be the applicable law, I am of the opinion that Evergreen's debt to appellee Ketchikan Spruce Mills was discharged by the June 27, 1962, payment and application to the State Manor account. I am of the further opinion that the June 27, 1962, payment and application effected a discharge of the materialmen's lien which appellee Ketchikan Spruce Mills had filed to secure payment of this indebtedness owed by Evergreen to it on the State Manor account. The subsequent redesignation on July 6, 1962, by Evergreen did not have the effect of reviving Ketchikan Spruce Mills' materialmen's lien which had been filed against appellant State Manor's lot 4 of the State Manor Subdivision.

It is established that a debtor who owes money on several accounts to a creditor has the right to designate to which account any given payment is to be applied. See

---

10. Michael Rose Prod., Inc. v. Loew's Inc., 141 F.Supp. 257, 261 (S.D.N.Y.1956); Murray v. Gadsden, 91 U.S.App.D.C. 38, 197 F.2d 194, 202, 33 A.L.R.2d 554 (1952); 9 Wigmore, Evidence § 2417 (3d ed. 1940).

11. In Durkee v. Busk, 355 P.2d 588, 593 (Alaska 1960) we held that only clear and convincing evidence that a mistake has been made will justify a decree of reformation of a written agreement.

12. Authorities cited note 10 supra.

Restatement, Contracts § 387 (1932), where it is stated in part:

> Where more than one matured contractual duty is owed to the same person and these duties are for performances of identical character, such as the payment of money, a payment or other performance capable of discharging in whole or in part either one or another of these duties, is applied, subject to the rules stated in §§ 388–393.
>
> (a) as the debtor, at or before the time of payment or performance, manifests to the creditor an intention to have it applied; * * *.

The Restatement's comment to subsection (a) of § 387 reads in part:

> A direction by the debtor to the creditor as to the debt to which a payment is to be applied is immediately operative on the creditor's acceptance of the payment. Unless the payment is made from funds impressed from a trust for the payment of a particular debt the creditor has no privilege to disobey the direction.

Here the record discloses that the debtor Evergreen, on June 27, 1962, directed that $3,239.71 of the $11,244.44 payment it was then making to Ketchikan Spruce Mills (Evergreen's creditor) be applied to the State Manor account (an indebtedness in the amount of $3,239.71 which Evergreen owed to Ketchikan on the State Manor account). The record further establishes that Ketchikan Spruce Mills acceded to Evergreen's direction and accepted the $3,-239.71 payment. Thus, under the circumstances as disclosed by the record, Evergreen's direction to apply $3,239.71 of the $11,244.44 payment to the State Manor account was "immediately operative."

The fill extent of the contractual duty owed by Evergreen to Ketchikan Spruce Mills on the State Manor account was to pay the sum of $3,239.71. This obligation of Evergreen's was discharged by virtue of the June 27, 1962, payment and application to the State Manor account. See Restatement, Contracts § 386 (1932), where it is stated that: "A contractual duty is discharged by the exact performance thereof." To the same effect is Professor Corbin's statement in 5A Corbin, Contracts § 1230 (1964), where in discussing discharge of a liquidated money debt, he states:

> The performance required is the payment of the money and this can be rendered by the debtor after the due date as well as at the exact time. Payment of the amount of the debt operates as a discharge thereof, whenever it is made; * * *

It is also established that a debtor (in Evergreen's position) may direct the application of the payment to a secured debt (the State Manor account) leaving unsecured debts or accounts remaining unpaid. To the extent a payment is so applied, the secured obligation is discharged. See Restatement, Contracts § 387, comment a, illustration 1, at page 732, which reads:

> A owes B two debts of $1000 each, one secured, the other unsecured, and sends B $1000 in a letter stating the payment is to discharge the secured debt. B receives and keeps the money, but replies immediately, 'I shall apply the payment to the unsecured debt.' The secured debt is discharged.

When an indebtedness which is secured by a materialmen's lien is paid, the materialmen's lien is thereby discharged. Johnston v. Groom, 99 Cal.App. 462, 278 P. 935, 936 (1929); Monarch Lumber Co. v. Wallace, 132 Mont. 163, 314 P.2d 884, 890 (1957); Caley v. Kohlstad, 130 Mont. 7, 292 P.2d 995, 996 (1956); 57 C.J.S. Mechanic's Liens § 247 (1948). In light of the above authorities, I conclude that the June 27, 1962, payment by Evergreen and application of this payment to the State Manor account discharged the materialmen's lien which appellee Ketchikan Spruce Mills had filed to secure payment of this indebtedness owed to it by Evergreen on the State Manor account.

In this appeal, the majority states that:

Evergreen had the right, with the manifested assent of appellee, to change application of the $3,239.71 payment from the State Manor account to Evergreen's open book accounts with appellee, provided the rights of the third parties would not be jeopardized or injuriously affected. No such third party rights are involved here.[1]

I agree with the general proposition that a creditor and debtor may by mutual assent change a prior application of payment. But the authorities hold that in the instance of a secured indebtedness the original application of payment to the secured debt cannot be changed without the consent of all interested parties. In Johnston v. Groom, the court held that the original application discharges the landowner's liability for a materialmen's lien to the extent of the payment notwithstanding a subsequent reallocation by the materialman and the contractor. The court further stated that

the owners are third parties whose rights would be injuriously affected by a subsequent appropriation of the payment to another obligation.[2]

See also: United States to Use of Jackson Ornamental Iron & Bronze Works v. Brent, 236 F. 771, 774–775 (W.D.S.C.1916); Armour & Co. of Delaware v. McPhee & McGinnity Co., 87 Colo. 97, 285 P. 942 (1930); Romero & Sons Lumber Co. v. Babineaux, 151 So.2d 714 (La.App.1963).

Here the record shows that State Manor was the owner of lot 4 of the State Manor Subdivision against which Ketchikan Spruce Mills had filed the subject materialmen's lien to secure payment of the indebtedness owed to it by Evergreen. The record further reflects that State Manor did not consent to the reapplication of the payment Evergreen made to Ketchikan Spruce Mills on June 27, 1962. Under the authorities referred to above, Evergreen and Ketchikan could not change the June 27, 1962, payment and application to the State Manor account without the consent of appellant State Manor. Therefore, while Evergreen and Ketchikan were free to enter into any subsequent arrangement they desired to, they could not resubject State Manor's real property to the subject materialmen's lien without State Manor's consent as the underlying debt had been discharged by the June 27, 1962, payment and application.

One other aspect of the majority's opinion warrants comment. I am of the view that if, upon remand, the superior court should conclude that under the "Waiver of Notice of Non-Lien Liability", the individual appellants Stephenson, Foster and Diggins were sureties in regard to Evergreen's debt on the State Manor account, the June 27, 1962, payment and application operated to discharge them. Contrary to the majority's view, the general rule is that no detrimental reliance on the part of a surety is necessary to effectuate his discharge once payment is made of the debt upon which he is surety.

In Olson Constr. Co. v. United States, 332 F.2d 981, 984 (10th Cir. 1964), the court held that a surety is discharged by the initial allocation of payment notwithstanding a subsequent reapplication. See also Meeker v. Halsey, 87 F.2d 299 (2d Cir.1937); Gill v. Waterhouse, 245 F. 75 (9th Cir.1917); United States to Use of Jackson Ornamen-

---

1. The majority cites Restatement, Contracts § 392 in support of the text's discussion of the parties' right to change an application of payment. Section 392 of Restatement states in part that:

An application of a payment once rightfully made by one party, cannot thereafter be changed without the manifested assent of the other. Such assent may validate such a change and may also validate an original application otherwise not permissible.

2. Johnston v. Groom, supra, 278 P. at 936.

tal Iron & Bronze Works v. Brent, supra;[3] Columbia Digger Co. v. Rector, 215 F. 618, 628–630 (W.D.Wash.1914); City of Marshfield ex rel. McGeorge Gravel Co. v. United States Fid. & Guar. Co., 128 Or. 547, 274 P. 503 (1929); 4 Williston, Contracts § 1232 (Rev.ed.1936).

In regard to this question, Williston states:

> Whatever may be the form of a suretyship contract, the creditor is entitled to but a single full payment of his claim and if he receives that * * * the surety is discharged. Even though the debt was paid by a third person, the result is the same.[4]

The same conclusion is reached in Simpson, Suretyship, at 313 (1950); 72 C.J.S., Principal and Surety § 144c.[5]

As indicated by the above authorities, the source of payment has no relevancy in relation to the issue of whether or not a surety is discharged.[6] Here the debtor, Evergreen, paid the indebtedness with its own funds. If any of the appellants were, in fact, sureties on Evergreen's State Manor debt to Ketchikan Spruce Mills, they were discharged by the June 27, 1962, payment and application to that account regardless of the source of Evergreen's funds and without regard to any detrimental reliance on the part of the sureties.

3. In United States to Use of Jackson Ornamental Iron & Bronze Works v. Brent, supra, 236 F. at 774, the court stated:
 If payment is applied to a secured debt, the debt is extinguished pro tanto and to the extent of such payment the surety is discharged. Payment, once made and applied, cannot be recalled and otherwise applied without the consent of the surety.

4. 4 Williston, Contracts § 1219, at 3508 (Rev.ed. 1936).

5. See also Annot., 57 A.L.R.2d 855, 865 (1958), where it is stated that:
 Once a debtor or creditor applies a payment to an obligation for which a surety or guarantor is bound, the latter is discharged to the extent of the payment and neither the creditor nor the debtor can subsequently change the application.

6. The source of the payment has relevancy only in the situation where the surety seeks to have the payment applied to the assured account. There is a split in the authorities over whether a surety who is the source of payment can direct the application of the same. 6 Williston, Contracts § 1806 (Rev.ed. 1936).